# Commonwealth ex rel. Sage *v.* Sage, Appellant.

[Marked to be reported.]

160        399
d 27 SC ³313

*Attachment—Extradition—Jurisdiction.*

The courts can in a proper case surrender an alleged criminal to the courts of a sister state for trial, but they cannot compel by an attachment a resident of Pennsylvania to go into another state and submit himself to the jurisdiction of its tribunals.

*Habeas corpus—Parent and child—Comity.*

Considerations of comity do not require the courts of this state to dismiss the parties with directions to proceed to another state, in which the contract was made, or the parties were domiciled, so that the law of that state may be administered by its courts, but simply that our courts shall apply the same rule that the courts of the proper state apply.

To a writ of habeas corpus issued by a father to secure the custody of a child, the respondent, the relator's wife, filed an answer averring that the relator was not a fit person to have the custody of the child.   It was not denied that both relator and respondent had been previously domiciled in New Jersey, and that the relator continued to reside there, and that, under the laws of New Jersey, he was the natural guardian of the child.   *Held,*

that no considerations of comity justified the court in awarding the child to the relator, without inquiring as to his fitness to have the custody of the child.

Argued Jan. 11, 1894. Appeal, No. 119, July T., 1893, by defendant, Hettie Sage, from order of Q. S. Phila. Co., in favor of relator, Chas. H. Sage, on writ of habeas corpus. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Habeas corpus for custody of child.

The following opinion was filed by REED, J.:

" This proceeding was begun by the relator who avers that both he and the respondent, who is his wife, are citizens of the state of New Jersey, and that Joyce Sage, their child, in whose name, as next friend, he also petitions, was taken by the respondent into the state of Pennsylvania, to avoid service of a writ of habeas corpus, for which he had petitioned in New Jersey. Upon the return day of the petition filed in this court, a hearing was had. No written return was entered, but the respondent asked orally, through her counsel, to be heard upon the merits of the case. It was, however, admitted that up to a very recent time, until the end of the month of April, the parties were domiciled in New Jersey, and that the father's domicile was still in that state ; the respondent contended and the relator denied that the former left her husband's home for just cause,—the respondent asserting that she did so because of the brutal treatment on his part, and he declaring that the reason for this step on her part was her desire to avoid the service of a writ of habeas corpus in New Jersey. The relator also submitted that this court had no jurisdiction in the case except such as is ancillary to that of the courts of New Jersey. Upon these facts the court, holding that the tribunals in New Jersey were those to which application should be made, remanded the child temporarily into the custody of the respondent, upon counsel agreeing to go before the judge in New Jersey the following day. The respondent refused, however, to do so, as appears by affidavit subsequently filed by relator.

" The respondent, having been brought in by attachment before this court, and the parties being permitted to file a return to the petition, and a traverse to the return, the question of the

custody of the child, Joyce Sage, again arises. It is not necessary to hold that even one who, like this respondent, has been but a few weeks in Pennsylvania, cannot appeal to the courts of this state to hear and determine upon the merits the points as to which of two parents is a suitable custodian of the child. But certainly the reason for our interference should be clear and strong. The child in question is upwards of nine years of age; the father, by the law of the state where the family has always been domiciled, until within a month ago, and which he has never left, is the legal guardian of the child, and when that child was taken from him he was prompt in his appeal to the law of that state. It was only when he could not get service of the legal process of that state that he resorted to this court. Considerations of comity between the states of the Union are of the highest importance, and suitors should be made to understand that they cannot, without good reason, shift their causes from one jurisdiction to another, except where such right is expressly given by the law. State lines are so easily overleaped that no encouragement should be given to attempts to take litigation, especially in domestic controversies, from the forum of the domicile, whenever caprice or design may incite the litigant. And most particularly when legal proceedings have been begun at home should courts elsewhere lend their aid to tribunals within whose jurisdiction the parties have hitherto lived."

The following decree was entered:

"And now, June 14, 1893, this case came on for hearing, and leave being granted to defendant to file an answer and to the plaintiff to traverse the same, and it having been admitted by counsel for each party, both at the present hearing and that had May 19, 1893, that the petitioner, Charles H. Sage, and the respondent, Hettie Sage, were formerly domiciled in the state of New Jersey since the birth of the child, Joyce M. Sage, and that the petitioner has continued both before the birth of the said child and since and still continues to be domiciled in the state of New Jersey, and it having been also admitted by counsel that no guardian has been appointed for the said child in New Jersey, or elsewhere, and that by the law of New Jersey, the petitioner is the natural guardian of the said child, [it is adjudged and decreed in order that the court may show the con-

sideration due to the law of another state of this Union, and
without passing upon the question of the true domicile of the
respondent, whether in Pennsylvania, or with her husband in
New Jersey, and without passing upon the fitness of the peti-
tioner to act as guardian of his child, that the child be remanded
to the custody of the petitioner, her guardian under the law of
New Jersey, leaving it to the respondent to show cause in any
proper tribunal of that state why another disposition should be
made as to the custody of said child.] " [7]

Defendants' answer, recited above, averred that the relator
" neglected his duty as husband and father in the proper be-
havior and support of both herself and child by frequent
absence and neglect." She also specified one instance of threat-
ened and attempted violence to herself.

*Errors assigned* were (1) that the proceedings of the court
below were irregular and illegal ; (2) that the petition for the
habeas corpus was by a nonresident, unsupported by a proper
jurat ; (3) in withholding jurisdiction of the case after the al-
lowance of the writ of habeas corpus ; (4) in not giving a hear-
ing to the mother of the child on the merits, and as to the
proper welfare of the child in all respects with her, and as to
the choice of the child herself, remaining with her, and in pass-
ing over the question as to the fitness of the father, which was
denied ; (5) in ordering that the child should be taken into
New Jersey ; (6) in ordering an attachment to issue against
the mother and her uncle, George M. Sherman, and their ar-
rest thereunder for an alleged contempt upon the mere state-
ment and petition of the learned counsel, viz., John Weaver,
Atty. for Chas. H. Sage, supported by no affidavit and preceded
by no proof of contempt in the premises ; (7) portion of order,
as in brackets above, quoting it.

*Aaron Thompson* and *John W. Jennings*, for appellant.—The
virtue of the writ of habeas corpus is lost if the liberty of a child
is thus taken away against her choice and without hearing.
The father is not entitled to the custody of his child if he is
personally unfit for such a trust, and although the parties were
domiciled in different states : Com. v. Addicks, 5 Bin. 520 ;
Com. v. Demot, 7 Phila. 624 ; State v. Stigall, 2 Zab. 286 ; Ben-

net v. Bennet, 2 Beas. 114; English v. English, 4 Stewart, 543.
Certiorari brings up the regularity of habeas corpus for re-
view: Gosline v. Place, 32 Pa. 520; Ewing v. Thompson, 43
Pa. 373; Ewing v. Filley, 43 Pa. 384.

*John Weaver, John Sparhawk, Jr.,* with him, for appellee.—
This court has no jurisdiction to review the decision of the
court of quarter sessions upon a habeas corpus issued by that
court to determine the custody of a child: Com. ex rel. Rohn
v. Kryder, 1 Penny. 143; Act of April 4, 1837, § 2, P. L. 378.
The Supreme Court will not review the discretion of the court:
Rennniger v. Thompson, 6 S. & R. 1; Loretto Road, 29 Pa. 350;
Duff's Road, 66 Pa. 459; Com. v. Demott, 64 Pa. 307.

An order for the surrender of a child will be enforced by at-
tachment: Com. v. Reed, 59 Pa. 425.

In Com. v. Addicks, 5 Bin. 520, a careful examination of the
case does not verify the statement that the parties were domi-
ciled in different states. The parties must have been domiciled
in this state, for they were divorced by the court of common
pleas of this county, but one month before the hearing of the
habeas corpus issued by the Supreme Court.

In Com. ex rel. v. Demot, 7 Phila. 624, the child was five
years old, and the father, the relator having deserted his wife
and child, had been arrested by the guardians of the poor, and
the quarter sessions had made an order on him for their sup-
port. He then applied to this court for the writ of habeas
corpus.

The father is entitled to the custody of the child: Fitler v.
Fitler, 2 Phila. 372; Snyder v. Snyder, 11 Lancaster Bar, 63;
Bennet v. Bennet, 2 Beas. 114; Baird v. Baird & Torrey, 21
N. J. 384.

*Aaron Thompson* and *John W. Jennings,* for appellant, in
reply.—It seems that in a proper case, where the equity of the
party who seeks relief is clearly made out, where it affords the
only means of averting an injustice, all the effects of a writ of
error may be given to a certiorari. The certiorari brings up
the record showing the nature of the application and judgment.
And it is a familiar principle that the possession of discretion-
ary power does not justify its improvident and excessive use:

Grubb's Ap., 82 Pa. 23, 32; Com. v. Newton, 1 Grant, 453; Hummell v. Bishoff, 9 Watts, 416.

It becomes necessary to ascertain with precision the nature of the contempt involved and the nature of the commitment for that contempt. There are two classes of contempt: (1) Actual contempt in the face of the court, such as disrespectful or insulting language or behavior in the presence of the court. (2) Constructive contempt by disobedience to the process of the court: Williamson v. Lewis, 39 Pa. 15.

OPINION BY MR. JUSTICE WILLIAMS, March 26, 1894:

The writ of habeas corpus in this case seems to have been resorted to as an extradition proceeding, and to have been treated as such throughout. The relator is a resident of New Jersey. His wife, the respondent, and their infant daughter, now about ten years old, resided with him in that state, until their separation in January, 1893. Each accuses the other of abandonment, and of having brought about the separation. After four months, the relator, without having contributed anything towards the support of his wife and child meantime, comes into Pennsylvania for the purpose of taking the daughter from her mother by asserting his legal right to her custody under the laws of New Jersey. If he has such legal right, it is his duty to show it in the forum into which he comes; and if there is any reason why that right ought not now to be asserted, the respondent may properly set it up in her return to the writ. If an issue of law, or of fact, is thus raised, it must be heard and decided in the court out of which the writ issued. If the right asserted is found to exist, and no sufficient reasons are shown for refusing to enforce it, the court will award the custody of the child accordingly, and the relator will be permitted to withdraw it from the jurisdiction of the court making the decree. But if the right alleged is not shown to exist, or if, being shown, it appears on all the evidence to have been parted with by agreement, or forfeited by misconduct, or to be one that, for the sake of the child, ought not to be enforced, the court will decline to interfere and the writ will be dismissed, or a decree made formally awarding the custody to the respondent.

In this case the writ was made returnable on the 12th day of

May. On that day the hearing was continued till the 19th. It was then again continued; but on the following day one of the counsel for the relator came into court with a suggestion signed by himself and not sworn to by any one, in which he recited an order made by the learned judge of the court below, requiring the respondent and a relative with whom she boarded, by the name of Sherman, to take the child Joyce Sage into the state of New Jersey "for the purpose of having a writ of habeas corpus served upon them, as all parties being domiciled in New Jersey, were subject to the jurisdiction of the courts of New Jersey." He further recited a promise to obey the order so made, and a neglect, by the respondent and Sherman, to obey the "orders and mandate of this court;" and concluded with a prayer for an attachment against both. Without any rule to show cause, or notice to the parties whose liberty was at stake, an attachment was immediately issued, on which an arrest was made, from which the parties were relieved on the 22d day of May by giving bail in the sum of fifteen hundred dollars each. The order for the attachment is quite as unique as the petition. It recites that "It appearing by the record that the respondent Hettie Sage and one George W. Sherman, is in contempt; and it also appearing that Charles H. Sage has moved for an attachment against the said Hettie Sage and George W. Sherman for said contempt," and that verbal notice has been given to respondent's counsel that an attachment would be moved for; and upon this basis it directs an attachment to issue, and that Hettie Sage and George W. Sherman be brought forthwith into court to answer for said contempt.

Now the record does not show that these parties were in contempt, or were even charged with contempt. The petition recites an order upon the respondent to take the child into New Jersey and submit her right to its custody to the courts of that state, but neither the docket entries nor the files show the existence of such an order. It was never made. The court had no legal right to make it. The respondent would have been guilty of no contempt for disregarding it, if it had been made.

The courts can in a proper case surrender an alleged criminal to the courts of a sister state for trial, but they cannot compel a resident of Pennsylvania to go into another state and submit himself to the jurisdiction of its tribunals by an attachment.

Whether the order set out in the petition was actually made or not is therefore a matter of no consequence. If it was made, it was a nullity. If it was not made, then there is no foundation for the charge of contempt; so that in either event the attachment must be set aside and all that has been done under it must fall.

But a final decree was made on the 14th day of June, 1893, awarding the custody of this child to her father, and the remaining question is whether this decree should stand.

The record shows that the respondent made her answer or return to the writ on the same day on which she was relieved from the custody of the sheriff by entering bail. Three days later, which was the 25th day of May, the relator made a formal traverse of the answer. Issues of fact were thus made up for trial and determination by the court below. If the facts stated in the answer were true, the relator was unfit to have the custody of his child. If they were false, he was entitled to such custody. A decree should have rested on a determination of this issue, but the decree before us did not. It set forth the admission by counsel that both parties had been previously domiciled in New Jersey and that the relator continued to reside there; that no guardian had been appointed for the child; that the relator was, by the laws of the state of New Jersey, the natural guardian; and "in order that the court may show the consideration due to the law of another state of this Union, and without passing upon the question of the true domicile of the respondent, whether in Pennsylvania or with her husband in New Jersey, and without passing upon the fitness of the petitioner to act as guardian of the child," it directed that the child be remanded to the custody of the petitioner, and that the mother must go into another state to have the question of his fitness considered and determined. We recognize the demands of comity, and our courts should be, as they are, always ready to accede to them; but comity requires of us that we administer the laws of another state between suitors in our own courts whenever this becomes necessary to the proper administration of justice in the particular case. It does not require us to dismiss the parties with directions to proceed to Maine or California or some other state, in which the contract was made, or the parties were domiciled, so that the law of a given state may

be administered by the courts of that state; but simply that we shall apply the same rule that the courts of the proper state would apply. This was all that comity required of the court below in this case.

The return to the writ of habeas corpus, and the traverse thereof by the relator, raised no question under the law of New Jersey. If they had done so, and the rule in that state differed from ours on the question so raised, the court should have followed the New Jersey rule. But the question raised on the record was one of fact. The validity of the marriage under the laws of New Jersey was not denied. It was not denied that the relator was the father of Joyce Sage, nor that under the laws of New Jersey he was her natural guardian. But conceding all this, the respondent denied that he was a fit person to have the custody of this young girl. This was the only question before the court below, and it was the legal right of the respondent to insist on its decision before her young daughter should be taken from her. If her contention was sustained, then, under the laws of New Jersey as well as the laws of Pennsylvania, she was entitled to retain the child: Bennet v. Bennet, 2 Beas. 114; Commonwealth v. Addicks, 5 Bin. 520; Commonwealth v. Smith, 1 Brewster, 548. The legal right of the father must yield to considerations affecting the welfare of the child. The present condition and the future prospects and advantage of the child should be considered; and where the child is of sufficient intelligence, its preferences and attachments should be consulted before the question of its custody is determined.

The decree committing Joyce Sage to the custody of the relator does not rest on a determination of any question that was before the court below, and for that reason it must be reversed at the cost of the relator. The record is remitted with a direction that the case be heard upon the issue made up by the return to the writ and the formal traverse of the same.