Estella D. Silliman et. al., Appellants, *v.* William Whitmer, Robert F. Whitmer, Samuel Slaymaker and Charles Steele, trading as William Whitmer & Sons.

*Practice, S. C.—Dissolution of injunction—Bond—Supersedeas—Equity.*

Where the court of common pleas dissolves a preliminary injunction and an appeal is taken, it is wholly within the discretion of the Supreme Court justice in awarding a rule for a supersedeas, whether or not an additional bond shall be entered.

*Practice, S. C.—Rule for supersedeas—Injunction—Equity.*

On a bill in equity restraining the removal of the tracks of a short line of railroad, the court granted a preliminary injunction, and subsequently dissolved it. An appeal was taken from the decree dissolving the preliminary injunction. Forty-nine days before the first day of the next term of the Supreme Court, one of the Supreme Court justices granted a rule to show cause why a special supersedeas should not be granted returnable the first day of the following term, " all proceedings and operations on the ground to stay meanwhile." Under the uncontested facts the delay could not cause any appreciable injury to the plaintiffs, and a bond sufficient to protect defendants had been filed when the appeal was taken. The defendants were partners. The senior partner lived in Philadelphia, and had no connection with the operations on the ground in Union county, where the railroad was situated. A junior partner had charge of these operations. The senior partner was, however, actively engaged in the partnership affairs in other localities. A copy of the rule for a supersedeas was served on defendants' attorney in Union county, and also upon the senior member of the firm in Philadelphia, but no service was made upon the junior partner, or upon any one where the operations of removing the railroad were being conducted. Neither the attorney nor the senior partner notified the junior partner of the rule, and the operations were continued and the railroad removed before the return day of the rule. *Held* (1) that under the circumstances of the case there was no reason for requiring additional security to be entered when the rule for the supersedeas was granted; (2) that inasmuch as the railroad had been removed, and an order for a supersedeas pending the appeal would have nothing to operate on, the Supreme Court would suspend the decree on the rule until final hearing of the appeal; (3) that service of a rule upon defendants' attorney, was not service upon the defendants, and the attorney was under no obligation to notify the defendants of the rule; (4) that the senior partner was guilty of contempt of court in not notifying the junior partner of the rule, and in not taking steps to have the order of court obeyed; (5) that the fact that no special bond had been filed when the rule for supersedeas was awarded did not invalidate the order, and furnishes no reason why an attachment ought not to issue for disobedience of it.

Argued Jan. 18, 1896.   Rule to show cause why attachment for contempt should not be awarded against defendants on appeal No. 83, Jan. T., 1896, by plaintiffs, from decree of C. P. Union County, December Term, 1895, No. 1, dissolving a preliminary injunction.      Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.     Rule absolute as to William Whitmer.

Bill in equity to restrain the removal of the tracks of a short line railroad.

Rule to show cause why a special supersedeas should not be granted.

Rule for an attachment for contempt and for an order of restitution.

The facts appear by the opinion of the Supreme Court.

*J. Merrill Linn, P. B. Linn, S. H. Orwig, W. F. Shepherd, J. F. Duncan* and *W. A. Marr* with him, for Estella D. Silliman et al.—The court will allow the appeal and certiorari to operate as a special supersedeas when great injury would result to the appellant by the injunction, and the other side can be compensated in money where an ample bond has been filed in perfecting the appeal: Barker v. Steel Co., 23 W. N. C. 109.

Even if it does not operate of itself as a supersedeas, under the special circumstances of the case it should be allowed to do so: Citizens' Pass. Ry. v. East Harrisburg Pass. Ry., 161 Pa. 121.

Under the act of assembly of June 12, 1879, P. L. 1879, p. 177, such appeals have a right to be heard at any session of the Supreme Court.

The proper remedy for any threatened injury pending the appeal is to apply to this (Supreme) Court for a special order of supersedeas: Haught v. Irwin, 166 Pa. 548.

Where the defendant has built in violation of a condition, after bill filed (a motion for a preliminary injunction having been dismissed prior to filing of answer) the plaintiff is entitled to a decree of abatement, the defendant's disregard of his contract having brought the evil on himself: Clark v. Martin, 49 Pa. 289.

A supersedeas granted on an appeal from an order appointing

receivers, after the receivers have taken possession of the property, entitles the owner to an immediate restitution of such property: Buckley v. George, 15 S. (Miss.) 46.

An appeal duly taken from a decree with order to make it a supersedeas should be obeyed: Haught v. Irwin, 166 Pa. 548; New Brighton and Newcastle R. R. Co.'s App., 105 Pa. 13.

*Andrew A. Leiser, Joseph C. Bucher* and *Samuel H. Kearcher,* for William Whitmer & Sons.—Neither a decree for an injunction nor a decree dissolving an injunction is suspended in its effect by a writ of error, although all the requisites for a supersedeas are complied with: Hovey v. McDonald, 109 U. S. 150; Haught v. Irwin, 166 Pa. 548.

No bond was given nor approved at the time this restraining order was granted, though expressly required by this act to support the order. Besides, such bond is expressly required by rule 75 of the Rules of Equity.

Plaintiffs showing no equity, and not having complied with the requirement of the law in these essentials, we submit that this rule should be discharged: 2 Daniell's Ch. Pract. 4th ed. 1469.

That this court will not interfere with the action of the court below when the facts are disputed, and in advance of a hearing upon appeal from a final decree when all the facts are before them, is held in Barrett's App., 21 W. N. C. 139.

None of the parties were in contempt inasmuch as the order awarding the rule for supersedeas was invalid: Com. ex rel. v. Judges, 102 Pa. 228.

OPINION BY MR. JUSTICE DEAN, January 27, 1896:

The defendants claimed property in and the right to remove an iron tram railway about seven miles in length, constructed for the purpose of removing the timber on a large tract of land. in Union county; plaintiffs denied this right, hence a suit in equity, in which the court below, by preliminary injunction, temporarily restrained defendants. After hearing testimony, on November 6, 1895, in opinion filed, the court dissolved the injunction; from this decree plaintiffs appealed to this court, filing bond with approved surety in sum of $10,000, and followed this on November 18, by application in vacation to

Justice MITCHELL of this court for an order of supersedeas pending the appeal; on this application same day he indorsed this order:—"Rule granted to show cause why special supersedeas should not be granted, returnable to Monday, January 6th, 1896, all proceedings and operations on the ground to stay meanwhile."

It will be noticed, no additional bond was required preliminary to the order; but this was wholly within the discretion of the Justice awarding the rule. He simply directed the situation of the parties as it existed before the dissolution of the preliminary injunction should be maintained forty-nine days longer. As such short delay, under the uncontested facts, could not result in appreciable damage to defendants, and as the bond already filed was amply sufficient, there was no reason for exacting additional security. And the rule having been awarded in vacation, it was made returnable before this court the earliest day possible, that is, the first day of the term. On the same day it was awarded, copies of the rule and order of supersedeas were served on William Whitmer, senior partner of Whitmer & Sons, defendants. He resided in Philadelphia, and, so far as appears, had no connection with the operations of the partnership on the grounds in Union county; he was an active member of the partnership, however, in other localities. On the 19th of November, the day following the granting of the rule, a copy was handed to Andrew A. Leiser, Esq., attorney for defendants, at his office at Lewisburg. Charles Steele, a member of the partnership, resided at Sunbury, where was the partnership office; he was in charge of the work on the ground, employed the men and directed their operations, and on him the preliminary injunction issued by the court below, and afterwards dissolved, had been served. From some wholly unexplained neglect, no service of the order of supersedeas was made upon him or on those he employed. He, and the employees of his firm, continued taking up and removing the tram railway, after the order was served on William Whitmer, and in a few days the work was completed.

As touching the rule to show cause why there should not be a supersedeas pending the appeal, such an order has now nothing to operate on; the railway has been removed, and an order to restore it can be as effective on final decree as if made now,

if at that time the merits of the cause should be adjudged with plaintiffs. Therefore, we suspend decree on this rule until final hearing of the appeal.

On the first day of this term, the return day of the rule, on statement of facts as to disregard by defendants of the temporary order for stay of proceedings until the sitting of the court, a rule to show cause why an attachment, as if for contempt, should not issue against defendants was awarded, returnable Saturday, 18th of January, 1896.

As already noticed, the order to cease operations was served only on William Whitmer, residing in Philadelphia, and on Mr. Leiser, counsel for the defendants, in Union county. As to Mr. Leiser, he being in no sense a party to the proceedings, the order was not directed to him, and except as a matter of courtesy towards him, as opposing counsel, we see no reason why it should have been served upon him. He is a highly respectable member of the bar, and states distinctly, under oath, that he gave no notice of the order to his clients, because he assumed it had been served personally (as, in our opinion, it ought to have been) on Mr. Steele, the partner in charge of the work, and on whom had been served all the papers in the preceding litigation. This was an altogether warranted assumption by a lawyer; he had no reason to suppose his adversaries would not also procure service on the partner in active charge of the work, who was well known to them, and on whom previous service of the injunction was had. He was justified in presuming, if they wanted the work promptly and effectively stopped, the man who was carrying it on would at once be served with the order to stop it.

As to William Whitmer, who was served the same day the order was issued, although there are some mitigating circumstances, he is guilty of more than a mere technical contempt; he showed a reckless indifference to the command of a peremptory order directed to and served on him. True, he was in Philadelphia, and the subject of the litigation was in Union county; but he was a leading member of the firm which was asserting a right to tear up the road, and which he knew was at that time engaged in that very work. As a partner, it was within the scope of his authority to at once transmit an order to those in charge to stop work. He says, he told the officer

who served the order, that the case was in the hands of his attorney; he then states further, that personally, he had nothing to do with the removal of these rails, or with operations on the ground, the whole matter being in charge of his partner, Steele, and he wholly disclaims any intention to disregard the order. Taking these statements as true, and we have no reason to disbelieve them, they show such an indifference to the plain order of the court, and his own duty connected therewith, as to almost equal flagrant intentional violation of law. There is no evidence that he even attempted to communicate with Steele, his active partner on the ground, or with his counsel at Lewisburg; he, one of defendants, having, by law, the duty to obey and the right to command his copartners to respect the order, neither utters a word nor performs a single act significant of a desire to secure obedience to a writ issued in a suit of which William Whitmer & Sons are parties defendant. In fact, he did not perform his duty as a suitor or a citizen. He doubtless hopes for a favorable decree on the merits of his cause, and expects the courts to enforce, with the whole power of the commonwealth, that decree, yet an interlocutory temporary order in favor of the adverse party he treats as not worth noticing by telegram or letter to his partner. Taking into view every circumstance which tends to exculpate, his own statement under oath to a great degree inculpates him; therefore, as to him, the rule is made absolute.

One other matter calls for notice in connection with this decree. One of the reputable counsel for respondents to this rule has orally argued before the court, and gravely attempted to maintain this proposition in the printed paper-book: (1) That the order of Justice MITCHELL of the 18th of November, 1895, was irregular, because previous thereto no special bond had been filed, and therefore (2) no attachment ought to issue for disobedience of it. Or, more concisely, if a party to whom a writ is directed questions its regularity, he can disobey it with impunity.

To sustain this sort of anarchy as law, the case of The Commonwealth v. The Judges, 102 Pa. 228, is cited. A mere statement of the facts in that case is sufficient to show how utterly it is wanting in application to the facts in this.

One Middleton had appealed from a final decree of the or-

phans' court of Philadelphia, and had given recognizance in the sum of $250 before the prothonotary of this court, and a certiorari issued commanding the judges to send up the record, but they, in the exercise of the discretion conferred on the orphans' court by the act of 1832, declined to certify the record to this court until the appellant had entered sufficient security, as required by the act; then, on petition this court granted a rule on the judges to show cause why peremptory mandamus should not issue; to this the judges made return, that they had required that appellant enter the security fixed by the orphans' court, as enjoined by the act of assembly of 1832, but at the same time averred their entire willingness to certify the record if this court was of opinion it was no longer the duty of the orphans' court to fix the security required by the act of 1832. We decided, the act of 1832 was still in force, and wisely confided to the orphans' court the duty of fixing the security on appeals involving the large and complicated interests in litigation in that court, rather than in the prothonotary of this court. Every act of the judges displayed obedience to the law, and a willingness to submit to the orders of this court, as an appellate tribunal. If we had been of opinion the act of 1832 was repealed by the act of 1881, and had made absolute the rule for a peremptory mandamus, and the judges, on service of the writ, had refused to obey the command, or had treated it with contemptuous indifference, their conduct would have borne some resemblance to the attitude of defendants in this case.

That the decrees of courts having jurisdiction of the subject and parties, must, when unappealed from, be enforced, we have not heretofore heard doubted; a successful denial of it, is necessarily the end of the court, for decrees are worthless which the court is powerless to enforce. If decrees complained of as unjust or improvident be made by a court of last resort, the remedy is by application to that court to vacate or modify them. The remedy suggested here is to disobey them; while not altogether new, it is a somewhat rare one; it was proclaimed in 1776 in a paper known as " The Declaration of Independence; " we do not know that in this country it has been successfully resorted to since.

Perhaps, in thus noticing it, we have given more importance to the argument than the weight of it would seem to warrant,

but we have done so in the hope that, in the future, reputable counsel will not seek to maintain a proposition so utterly subversive of an orderly administration of justice, and one which will inevitably bring no end of trouble to any client who acts upon it.

As to said William Whitmer, he is adjudged in contempt, and is ordered to pay the docket costs of this proceeding; also the costs of printing paper-books on both rules to show cause; also to pay a fine of $500 for the use of the county of Union, Pennsylvania. It is further ordered, that if said fine and costs be not paid to the prothonotary of this court within five days, that then writ of attachment in contempt issue, directed to the sheriff of Philadelphia county, commanding him to arrest and imprison the said William Whitmer in the county jail of said county of Philadelphia until the said fine and costs be paid as herein directed. As to the other defendants, this rule is discharged.