**Nickler v. Nickler**

*Phillip J. Binotto Jr.,* for plaintiff.
*Rosemary Markham,* for defendant.

BELL, *J.,* June 8, 1987—This matter is before the court upon plaintiff's petition and supplemental petition to show cause why defendant, Richard Douglas Nickler, should not be held in contempt of court. A hearing was held on said petition on March 30, 1987, and the court makes the following findings.

On September 4, 1985, pursuant to a petition for relief under the Protection From Abuse Act at no. 11 September term, 1985, a hearing was held. At the close of that proceeding the court addressed plaintiff's request for an injunction preventing removal, disposition or encumbering or dissipating marital property in open court in the presence of the parties and their attorneys.

Immediately following this hearing, the court signed an order dated September 4, 1985, which included the following:

"And now, this September 4, 1985, upon consideration of the within petition and by agreement of the parties and their attorneys, it hereby ordered that defendant, Richard Douglas Nickler, is enjoined from transferring, encumbering, concealing, selling, removing, or alienating any real or personal property, marital or otherwise, pending a final disposition of this matter by the master."

The portion of this order stating "by agreement of

the parties and their counsel, was inserted by the court after it being the court's understanding that said order was in fact agreed upon by the parties at the P.F.A. hearing. This conclusion was reached following the statements made on the record by the then counsel for both parties, John P. Liekar Jr. for defendant and Phillip J. Binotto Jr. for plaintiff, in open court with both parties present. The relevent portion of the record taken on September 4, 1985, evidencing said agreement between the parties includes the following:

"THE COURT: Another matter, Mr. Binotto has filed a petition for injunction preventing removal, disposition or encumbering or dissipating marital property. I know one is not familar with the law, laymen, you get those, probably you get the hairs in the back of your neck raising, that's nothing unusual either when there's a divorce filed in the offing here and when there are marital assets of any value, then it's usual, and the new divorce code provides that an order or stipulation can be entered into whereby the party who possesses the marital assets will not dissipate them prior to the final disposition of either a divorce or equitable distribution of property. There's nothing unusual about that. Usually, everyone agrees, they'll say I will agree and stipulate where the court can sign an order saying I will not dissipate any assets, the wife can't sell cars and tearing down the house and the husband can't likewise, sell television sets and draining bank accounts. Again, hopefully, although I will sign this, hopefully, I'd like to see you all agree to that. But I will sign it. But even before we get to that, I'd like to see you people resolve your differences.

MR. LIEKAR: Your Honor, we have no objection to a mutual injunction type of order, or stipulation

that neither party would dissipate the assets. I agree it's not unusual, and I have no problem with that.

MR. BINOTTO: Your Honor, I would consent to that order prospectively, but as set forth in the petition, such an order would reward the individual or individuals who may have, prior to us getting to the courthouse, taken advantage of the situation. In this instance, it is our position that Mr. Nickler has taken certain assets that may not even be marital assets and has placed himself at an advantage and what I'd like is to have them both return to the status quo, by him returning personal property items, allowing her access to the checking account and the charge cards, and that's why I am requesting a hearing. I will stipulate prospectively to a mutual order that neither party will further dissipate assets. It is my understanding that some dissipation has already occurred and that he should not be rewarded."

The subject of the present contempt petition involves an occurrence in September 1986 wherein defendant, after discussing the matter with his present counsel and his accountant, gave notice to his employer of his intent to withdraw the balance of his savings plan in the amount of $44,559.10. This withdrawal was completed in November 1986. The transfer of said sum from defendant's employee savings plan constitutes a violation of the September 4, 1985, order of this court and, therefore, we have the subject contempt petition before us.

Defendant avers, as a defense to the contempt petition, that he was unaware of the subject order prior to September 3, 1986, at which time plaintiff had filed a prior contempt petition concerning certain jewelry transfers. Therefore, being unaware that the subject order existed, defendant should not be held in contempt of said order.

We fail to find any merit in defendant's first defense to the contempt petition. The following reasons are set forth to support our conclusion.

At the time of the September 4, 1985, protection from abuse hearing and the subject order, defendant was present in the courtroom as the matter involving dissipation of assets by either party was being discussed by the court and counsel for both parties. The record of said proceeding, set forth supra, clearly indicates that the parties were in agreement at that time, and that said order would be equally applicable to both parties. The order itself mentions only defendant since the bulk of the liquid assets were under his control, however, it was the intent of both parties involved that such order was to apply to both defendant and plaintiff. Any noncompliance or violation of the order would be dealt with through the contempt powers of the court.

Defendant alleges that his then counsel, John P. Liekar Jr., failed to provide him with a copy of the order following the September 1985 proceedings. In addition, Rosemary Markham, defendant's present counsel, who entered her appearance on February 5, 1986, also indicated that she never received a copy of the order from Mr. Liekar at the time of the transfer of the case and the file to Ms. Markham. Mr. Liekar testified at the instant contempt proceeding that he could not remember specifically whether or not he had forwarded a copy of the order to defendant or his current counsel, but it was his normal procedure to forward copies of all orders, correspondence and documents to his clients. He could recall no reason why he would have deviated from this general practice in this instance. However, we find this matter involving the forwarding of the sub-

ject order to be of little consequence since defendant most certainly was aware of the order when it was discussed and agreed upon during the September 4, 1985, hearing.[1]

Even setting aside the fact that defendant knew of the order as early as September 4, 1985, we find that he was again made aware of the order prior to his violation of the order. Defendant acknowledges that he, along with his current counsel, were made aware of the September 4, 1985, order following the filing by plaintiff of a prior contempt petition on September 3, 1986. The matter involving the dissipation of assets prohibited by the September 4, 1985, order was further discusssed during an October 15, 1986, hearing before the master in divorce, again where defendant and his counsel were present.

Finding that defendant is in contempt of the court's order dated September 4, 1985, we are left with the primary issue before us — whether or not defendant can be held in contempt of a court's order when, although he knew of the order's existence, he was advised by his lawyer to act in violation of the order. We conclude that such is not a valid defense.

In September 1986, a time when both defendant and his counsel, Rosemary Markham, were aware of the order's existence, Ms. Markham advised defendant that he should go ahead and withdraw the remaining $44,559.10 from his savings plan since the court's order prohibiting such action was illegal and was an invalid unilateral order issued without a

---

1. Defendant's educational background includes a four-year undergraduate college degree and two years of post-graduate work in business administration. Clearly he was capable of understanding the proceedings on September 4, 1985.

hearing.[2] As previously noted, the order was agreed to by the parties and their counsel at the September 4, 1985, hearing and was intended to apply to both parties.

We would again emphasize, however, that regardless of whether or not the subject order is illegal, and the court finds nothing to indicate that it is, defendant and his lawyer were in error when they unilaterally elected to violate the order. Defendant, through his counsel, never approached the court prior to the instant proceeding alleging illegality in the subject order nor was any other acceptable effort made to change or vacate said order during the period from September 4, 1985, to November 1986. In fact, it was not until the instant proceeding that any mention was made to the court of alleged illegalities in the subject order.

If a court has competent jurisdiction to issue an order, such an order must be obeyed until properly vacated. The court in *Commonwealth v. Ryan*, 459 Pa. 148, 159, 327 A.2d 351, 356 (1974) held that an error or irregularity in an injunction issued by the court is no defense to contempt proceedings for failure to obey the order. "On the other hand, it is equally well settled that a party may not be held in contempt of court for ignoring an order or decree which is void for want of jurisdiction in the issuing court." Id.

The fact that defendant's counsel advised him to ignore the court's order does not provide defendant with a shield against a contempt proceeding. *In re Grand Jury, April term, 1977, Wayne County*, 251

2. During the instant proceeding Ms. Markham, in her responses to the court and answer to the petition, indicated that she did in fact advise defendant to ignore the order of September 4, 1985.

Pa. Super. 43, 50, 379 A.2d 323, 326 (1977) tends to support our conclusion wherein the court states:

"Even if appellant had not been fully and understandingly informed by his counsel on the subjects of self-incrimination and immunity (a conclusion opposite that of a lower court) or if he had been misled by outside counsel as to the grand jury's operations, such erroneous advice from counsel is no defense to a finding of contempt."

While the factual settings may differ, we find the holding in the aforementioned case to be equally applicable here. This is especially true where, as here, defendant is an intelligent individual fully capable of reading and understanding the content of the court's order.

Defendant alleges that the sum of money was removed in order to "preserve and protect marital assets." Whether or not this is true is of little consequence. Where a valid order exists enjoining the removal of certain property, the party seeking to remove certain property for legitimate purposes must go before the court and seek specific permission to do same. Here that was not done.

Finally, defendant alleges that the court lacked proper jurisdiction to enter the subject order issuing an injunction. Defendant argues that section 403(a) of the Divorce Code, 23 Pa.C.S. requires an "award" to be entered prior to the court issuing an order for the purpose of protecting said "award" granted to one of the litigants. Legally, as well as logically, such a position is without merit.

Section 403(a) reads, in pertinent part:

"(a) Where it appears to the court that a party is about to remove himself or herself or his or her property from the jurisdiction of the court *or* is about to dispose of, alienate, or encumber property

in order to defeat alimony pendente lite, alimony, child or spousal support, or similar award, and injunction may issue to prevent such removal or disposition. . . ." (emphasis added).

We fail to interpret the above statute as requiring an award to have been previously entered before an injunction can be issued preventing the removal of certain marital or other property. In the case before us, the dissipation of certain marital assets (i.e. defendant's savings plan) constitutes a removal of said property from the jurisdiction of the court. Therefore, the court may properly issue an injunction to prevent the removal of certain property pursuant to the first part of section 403(a), supra.

Defendant's position is illogical because in a case such as this, the parties could fully dissipate all of the marital and nonmarital assets before the entering of an award. Such a scenario would be the result in a great many instances were it not for the court's injunction powers.

Defendant further argues that an injunction order requires that notice and a hearing occur within five days after the date of the injunction. Pa.R.C.P. 1531(d), 42 Pa.C.S. However, the need for such a hearing was unnecessary in the present case because of the agreement between the parties as demonstrated by the record taken at the September 4, 1985, hearing. We find the record to be clear in showing agreement between the parties as to the injunction, and the court thereby inserted "by agreement of the parties and their attorneys" into the order.

While defendant is found to be in civil contempt of court, it is clear to this court that a professional error was made on the part of defendant's counsel, Rosemary Markham. Her advice to defendant to ignore the court's September 4, 1985, order is in viola-

tion of Disciplinary Rules 7-106(A) and 7-102(A)(7) of the Pennsylvania Code of Professional Responsibility:

"DR 7-106(A) A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the court of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."

"DR 7-102(A) In his representation of a client, a lawyer shall not:

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

It is the lawyer's responsibility to know and effectuate the steps necessary to vacate an order of the court believed to be illegal or improper. In the case before us no effort was made to vacate, amend or test the validity of the September 4, 1985, order during the period beginning September 4, 1985, and ending with the withdrawal of the funds on November 21, 1986.

Therefore, for the foregoing reasons, defendant, Richard Douglas Nickler, is found to be in contempt of this court's order dated September 4, 1985.

### ORDER

And now, this June 8, 1987, after a hearing and upon consideration of the testimony and evidence presented, the court finds defendant, Richard Douglas Nickler, to be in civil contempt of this court's order dated September 4, 1985. The defendant is hereby ordered within 40 days of this date to return $44,559.10 to the Savings/Thrift Plan with his employer, Consolidated Coal Company, or deposit said amount in an appropriate interest-bearing escrow account in a well established and recognized bank.