Reilly *v.* Reilly, Appellant.

Argued March 22, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Harold E. Miller,* with him *Thomas I. Myers,* for appellant.

*Benjamin I. Levine, Jr.,* with him *Nelson, Campbell & Levine,* for appellee.

OPINION BY JACOBS, J., June 22, 1971:

The sole and narrow issue in this child-custody case is whether the Court of Common Pleas of Blair County has the authority to hear the controversy.

Appellant is the father and appellee is the mother of an 11-year-old son. The parents are divorced, the appellee living in Altoona, Blair County, and the appellant living in Camp Hill, Cumberland County. The boy lived with appellee in Altoona for approximately five years prior to September 5, 1970. On that date appellant picked up his son. He took him to Johnstown to visit the boy's paternal grandmother and then took him to Camp Hill. On September 16, 1970, appellee petitioned for a writ of habeas corpus in Blair County. After a hearing, which appellant did not attend, the court awarded custody to appellee based solely on her testimony and directed appellant to return the child to appellee. Appellant, by filing preliminary

objections, then challenged the jurisdiction of the court in Blair County alleging that the court of Cumberland County had jurisdiction.

The only witnesses at the hearing on the preliminary objections were appellant and appellee, and we will not disturb the hearing judge's finding that appellant acquired the boy by trick. On factual matters, the hearing judge is far better able to assess credibility and weight of testimony than we are. *Commonwealth ex rel. Shroad v. Smith*, 180 Pa. Superior Ct. 445, 119 A. 2d 620 (1956). Appellant testified that appellee understood that the boy was going to live with him in Camp Hill, while appellee testified that appellant had permission to take the boy to Johnstown for the weekend and was told not to take him to Camp Hill. The lower court determined that the boy's legal residence and domicile had for some time been with appellee in Altoona; that, since appellant had acquired his son by ruse or trick, the child's legal residence and domicile continued to be Blair County and thus Blair County had jurisdiction.

It is true that the jurisdiction of the subject matter in a child-custody case, *i.e.*, the right to custody of the child, follows either the domicile of the child or the residence of the child. *Commonwealth ex rel. Camp v. Camp*, 150 Pa. Superior Ct. 649, 29 A. 2d 363 (1942). Furthermore, when parents are divorced or separated, the child takes the domicile of the parent with whom he lives in fact. *Commonwealth ex rel. Burke v. Burke*, 168 Pa. Superior Ct. 578, 80 A. 2d 87 (1951). When a child either lives in Pennsylvania or is domiciled in the Commonwealth, Pennsylvania courts have jurisdiction to determine which parent is entitled to custody of the child.

It has long been recognized that the usual method of obtaining custody of a child is through the use of

the writ of habeas corpus. *In re: Minor Children of Rosenthal,* 103 Pa. Superior Ct. 27, 157 A. 342 (1931). Once it is determined that Pennsylvania courts have jurisdiction over the subject matter in a child-custody action, and habeas corpus is the procedural method used to obtain custody, it is necessary to turn to the statutory provisions governing writs of habeas corpus to determine which court in Pennsylvania has authority to hear the case. These statutory provisions are contained in the Act of May 25, 1951, P. L. 415, §1, 12 P.S. §1901, which provides, *inter alia:* "Any judge of a court of common pleas within this Commonwealth shall have jurisdiction, at any time, to issue a writ of habeas corpus upon application by, or on behalf of, any person (hereinafter called the relator) alleged to be unlawfully imprisoned or detained in any penitentiary, prison, reformatory, house of detention, mental institution, or any other place, (a) within the judge's judicial district or (b) outside of his judicial district, if relator was committed by action of any court of the judge's judicial district . . . ."[1] In *Commonwealth ex rel. Tiscio v. Martin,* 180 Pa. Superior Ct. 462, 120 A. 2d 307 (1956), *cert. denied,* 352 U.S. 856 (1956), this Court interpreted this statute: "The Act of May 25, 1951, P. L. 415, sec. 1, 12 P.S. sec. 1901, relating inter alia to venue in habeas corpus proceedings *provides for general jurisdiction in any judge of a court of common pleas* of this Commonwealth, *but limits the venue* to a judge of the judicial district wherein the relator is confined or to the judge of the judicial district responsible for relator's commitment. . . ." (Emphasis added.)

---

[1] The title of this act states: "An Act relating to habeas corpus; conferring jurisdiction upon the judges of the courts of Common Pleas; prescribing venue . . . ." It should also be noted that the provisions of this act relating to prisoners under sentence are repealed by the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180 *et seq.*

*Id.* at 465, 120 A. 2d at 308. This case makes it clear that the courts of common pleas have jurisdiction of the subject matter in child-custody cases (if Pennsylvania has jurisdiction), but not all courts of common pleas have venue in any given case where habeas corpus is used.

Since this boy admittedly was both domiciled and resided in Pennsylvania, the Common Pleas Court of Blair County was a member of the class of courts having jurisdiction of the custody case. However, venue was not properly placed in Blair County and thus the case should have been dismissed.[2]

Except where the court has committed a person to detention outside its judicial district, an exception not here applicable, the statutes governing writs of habeas corpus make it clear that before a court in a judicial district has the power to determine a writ, the person must be restrained or confined in that district. See *Commonwealth ex rel. Mees v. Mathieu,* 107 Pa. Superior Ct. 261, 163 A. 109 (1932).[3] This might appear to be inconsistent with cases such as *Commonwealth ex*

---

[2] Improper venue, of course, is waived by failure to raise it in preliminary objections. However, because prior case law has been unclear as to whether venue or jurisdiction is involved when determining which county has power to hear the case, and because the preliminary objections, although couched in terms of challenging jurisdiction, in effect question venue, we will proceed to decide this question.

[3] This case interpreted the Act of February 18, 1785, 2 Sm. L. 275 (12 P.S. 1871 *et seq.*), which has never been repealed and is merely supplemented by the Act of May 25, 1951. The 1785 Act states, *inter alia*: "If any person, shall be or stand committed or detained for any criminal or supposed criminal matter . . . it shall and may be lawful to and for the person so committed or detained, or anyone on his or her behalf, to appeal or complain . . . to the president of the court of common pleas for the county within which the person is so committed or detained. . . ." The act further (12 P.S. §1888) extended the habeas corpus remedy to all persons restrained or confined for non-criminal matters.

*rel. Burke v. Burke,* supra.[4]  *Burke* involved a situation where the child, although domiciled in Pennsylvania, resided, at the time the action was brought, outside of Pennsylvania.  This Court directed the court in the district in which the respondent resided to hear the case.  Although clearly the child was not *physically restrained* or *physically present* in that district, the respondent who had control over the child and was the restrainer did reside in the district.  Thus, a child, who is controlled by a person who resides in a district is, *in effect, restrained* within that district; the district in which the restrainer resides, therefore, has venue.  *Commonwealth ex rel. Hickey v. Hickey,* 216 Pa. Superior Ct. 332, 264 A. 2d 420 (1970).[5]

In the instant case, the child at the time the writ of habeas corpus was brought was not restrained in, nor did he reside in, Blair County.  The father who allegedly had unlawful custody of the child, but was the person controlling the child and the only one who could produce the child, did not reside in Blair County and Blair County did not have jurisdiction over him.  The fact that control of the child was gained by trick is of no import.[6]  Thus, Blair County did not have venue to hear the case.

Order reversed and petition dismissed.

---

[4] See, also, *Commonwealth ex rel. Camp v. Camp,* supra.

[5] Although *Hickey* speaks in terms of jurisdiction rather than venue, it states that the county of the custodian who has the power to produce the child is the court which hears the case when the child is physically outside the Commonwealth or the county.  See, also, *Commonwealth ex rel. v. Rahal,* 48 Pa. D. & C. 568 (1942).

[6] The appellee cites two lower court cases, *Commonwealth ex rel. Lobis v. Lobis,* 87 Montg. 14 (1966), and *Commonwealth ex rel. Page v. Page,* 29 Northumb. L.J. 48 (1957), as authority for the proposition that a furtive seizure of a minor child does not work a change of domicile.  Suffice to say that neither case considered the problem of venue between the counties as mandated by the habeas corpus acts.