## Commonwealth ex rel. Blank *v.* Rutledge, Appellant.

340

Argued March 22, 1974. Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*Alvin H. Frankel,* for appellant.

*Emanuel A. Bertin,* with him *Milton O. Moss,* and *Pechner, Sacks, Dorfman, Rosen & Richardson,* for appellee.

OPINION PER CURIAM, April 22, 1975:
The order of the court below is vacated and the action is dismissed.

OPINION BY PRICE, J., IN SUPPORT OF PER CURIAM ORDER:
The instant appeal involves the determination of custody of a minor child, Scott. The record indicates that Scott's parents separated on November 15, 1967. Several days later, after obtaining an Alabama divorce, the mother married her present husband, John R. Rutledge. A problem, the nature of which is unclear, seems to have developed concerning the validity of the Alabama divorce and as a result, Scott's mother secured a second divorce from the New Jersey courts some four years after the first divorce.

Appellee, Scott's father, a resident of Pennsylvania, was personally served with a copy of the New Jersey divorce complaint, but did not appear at the proceeding. On November 30, 1971, the New Jersey court granted a divorce to the mother, and awarded custody of Scott to her, with "reasonable visitation rights" granted to appellee.

Mr. Blank has visited Scott every other weekend since the divorce by driving the ninety miles from his home to appellant's home in New Jersey on Friday, getting the

child, returning to Pennsylvania where they spend the weekend, then driving Scott back to his home.

It was prior to one of these weekend visits that Mr. Blank filed his Habeas Corpus petition in Pennsylvania, seeking to obtain custody of Scott. The court below, following a hearing, awarded custody to Mr. Blank. This appeal by Mrs. Rutledge, Scott's mother, was brought to contest the award on the basis that the lower court had no jurisdiction to maintain the action. We agree. Appellant's contention, which is supported by the record, follows:

On Friday, July 20, 1973, Mr. Blank filed his petition for Habeas Corpus relief. The petition stated, as a jurisdictional fact, that "[t]he child is presently residing with Petitioner." In actuality, however, Scott did not enter Pennsylvania until Sunday, July 22, 1973, two days after the petition was filed. In our view, the lower court had no jurisdiction over the case on Friday, July 20, 1973, when the petition was filed, and Scott's belated "presence" in the Commonwealth on July 22, 1973, did not vest the Court of Common Pleas with jurisdiction *ex post facto.*

The *Restatement (Second) of Conflict of Laws* §79 (1971), lists three instances in which a court may exercise jurisdiction to determine custody of the person of a child. The court may hear the case when the child is (a) domiciled in the state, or (b) present in the state, or (c) neither domiciled nor present in the state, if the controversy is between two or more persons subject to the jurisdiction of the state.

It has long been the law of this Commonwealth that the child of divorced parents assumes the residence and domicile of the parent who is awarded custody. *Swigart v. Swigart,* 193 Pa. Superior Ct. 174, 163 A.2d 716 (1960); *Commonwealth ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649, 29 A.2d 363 (1942). In the case now before us, the child has been living with his mother in

New Jersey, pursuant to a custody order entered in that state, and not contested by his natural father. Under these circumstances, neither (a) nor (c) are relevant to this appeal, for Scott is clearly a resident of and domiciled in New Jersey, as is his mother. Therefore, the Pennsylvania courts have no jurisdiction based on the domicile of the child, nor based on a controversy between two or more persons subject to the Commonwealth's jurisdiction. The determination of jurisdiction, therefore, depends upon a finding that Scott was present in the Commonwealth at the time the action was commenced. For as this court stated in *Commonwealth ex rel. Teitelbaum v. Teitelbaum*, 160 Pa. Superior Ct. 286, 288, 50 A.2d 713, 715 (1947): "[t]he jurisdiction of the court attached on [the date] the original writ was issued."

The Habeas Corpus Act, Act of May 25, 1951, P. L. 415, §1 (12 P.S. §1901) *et seq.*, sets forth the requirements which the courts of common pleas must satisfy in order to entertain a habeas corpus petition. Section 1 of the Act provides:

"Any judge of a court of common pleas within this Commonwealth shall have jurisdiction, at any time, to issue a writ of habeas corpus upon application by, or on behalf of, any person . . . alleged to be unlawfully imprisoned or detained in any penitentiary . . . or other place, (a) within the judge's judicial district . . ." 12 P.S. §1901.

When the person "alleged to be unlawfully . . . detained" is not present "within the judge's judicial district" at the time the habeas corpus action is instituted, the courts of common pleas do not have jurisdiction. Such an interpretation is in accord with the philosophy expressed by this court in *Irizarry Appeal*, 195 Pa. Superior Ct. 104, 107, 169 A.2d 307, 308, *cert. denied*, 368 U. S. 928 (1961):

" 'Jurisdiction of a court in a proceeding involving custody is determined by the domicile or residence

of the child.' *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951). 'The majority rule in the United States is that a decree of a proper court awarding custody of a child is conclusive of the status of the child and therefore will be enforced in other states. The award is conclusive only of the status of the child and the parent at the time; it may be altered for reasons arising subsequent to the decree. *The child must, however, be within the jurisdiction of the decree-granting state; otherwise the state is without power to determine its status.'* Freedman, Law of Marriage and Divorce, §793." [Emphasis added]

In the instant case, the child was not in the Commonwealth and, therefore, not subject to the jurisdiction of our courts until two days after the writ was filed. To find that this belated entrance into Pennsylvania "cured" the defective jurisdiction when the petition was filed would be to encourage the practice of child snatching[1] and forum shopping, and to misstate the jurisdictional problem. We cannot so hold.

Russell J. Weintraub has commented with disfavor upon practices which lead to repeated litigation of custody awards. In his *Commentary on the Conflict of Laws,* 197-98 (1971), Professor Weintraub noted:

"The ease with which sister-state custody decrees can be modified and the multiple bases for custody jurisdiction have resulted in the sad spectacle of child snatching, forum shopping and repeated litigation of custody awards. A parent dissatisfied with the first custody award, or perhaps simply wishing to use the child as a weapon to inflict punishment on the other parent, forcibly removes the child to another state. Or the disappointed parent may refuse to return the child from an authorized visit outside the custody

---

1. This court has previously stated that "legalized abductions" should be discouraged. See *Irizarry Appeal,* 195 Pa. Superior Ct. 104, 169 A.2d 307, *cert. denied,* 368 U. S. 928 (1961).

forum. The other parent locates the child and petitions for a writ of habeas corpus for the child's return. Thus the scene is set for relitigating the custody issue. If this retrial produces a change in custody, another round of grabbing, running and litigating is invited. This pattern emerges again and again in the cases cited in this section on custody. Whatever chance the child had for stability and happiness is lost amidst the din of the warring parents."

This court has recognized that the Commonwealth has the "right to oversee the interests of children within this Commonwealth," *Friedman v. Friedman*, 224 Pa. Superior Ct. 530, 535, 307 A.2d 292, 295 (1973), based upon the duty of a state to protect the best interests and welfare of its children. The Commonwealth, however, has no interest in protecting children who are neither residents nor domiciliaries, and who are not present within its boundaries.

The jurisdictional problem presented by this case is an unusual one. It is clear that the court below was competent to hear and determine controversies of the general class to which this case belongs, *i.e.*, habeas corpus petitions for custody. What was lacking in the case now before us was a proper invocation of the court's jurisdiction.

The Pennsylvania Supreme Court recently dealt with a similar issue of the premature invocation of jurisdiction. The case, *Commonwealth v. Ryan*, 459 Pa. 148, 327 A.2d 351 (1974), involved the filing of an application for injunctive relief of a threatened strike.

The *Ryan* court determined that the jurisdictional section of the statute in question[2] prohibited the lower court from assuming jurisdiction until a strike was in progress. There was no actual strike, only the threat of one, on the date the action was *filed*. Thus, the lower

---

2. Act of July 23, 1970, P. L. 563, No. 195, §1003 (43 P. S. §1101. 1003) (Supp. 1974).

court had no jurisdiction to hear the case—even though the strike had begun by the time the first hearing was held. The court said:

". . . The defect of premature filing could not be cured by the subsequent occurrence of the threatened strike. As we said in *Brenner v. Sukenik,* 410 Pa. 324, 328, 189 A.2d 246, 248 (1963)·: '[t]he question of equity's jurisdiction must be determined *on the facts and circumstances existing upon the date the action is instituted: Lafean v. American Caramel Co.,* 271 Pa. 276, 114 A. 622 (1921)'. . . . But it was not merely the power to grant an injunction that was absent [on the date the suit was filed]; it was the right of the School Board to invoke jurisdiction at all. No right of action existed until the strike was in being. Where matters of jurisdiction are concerned, the courts must enforce the letter of the law." *Commonwealth v. Ryan,* 459 Pa. at 157, 327 A.2d at 355. [Emphasis added]

The principles of the *Ryan* case are equally as applicable to habeas corpus petitions as to complaints in equity. In the instant case, as in *Commonwealth v. Ryan, supra,* petitioner had no right of action until the child was *actually* within the Commonwealth, and the lower court could not assume jurisdiction over the child until he entered the Commonwealth. "A court which does not have jurisdiction of the child, does not have jurisdiction of the subject matter to determine the right of custody as between the parties." *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 559, 80 A.2d 829, 832 (1951). *See also Commonwealth ex rel. Rogers v. Daven,* 298 Pa. 416, 148 A. 524 (1930)·; *Commonwealth ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649, 29 A.2d 363 (1942).

This court reiterated the opinion of the supreme court in *Commonwealth ex rel. Graham v. Graham, supra,* in *Reilly v. Reilly,* 219 Pa. Superior Ct. 85, 280 A.2d 639 (1971). Therein, we were asked to determine

the jurisdiction of the Blair County Court of Common Pleas over a child-resident of Pennsylvania who was not physically restrained in, and did not reside in, Blair County at the time the writ of habeas corpus was filed. The court unanimously held that Blair County had no power to entertain the petition as it was not the proper venue for the action. The court stated:

"Except where the court has committed a person to detention outside its judicial district, an exception not here applicable, the statutes governing writs of habeas corpus make it clear that before a court in a judicial district has the power to determine a writ, the person must be restrained or confined in that district. See *Commonwealth ex rel. Mees v. Mathieu,* 107 Pa. Superior Ct. 261, 163 A. 109 (1932)." 219 Pa. Superior Ct. at 89, 280 A.2d at 641.

The instant situation is an extension of *Reilly v. Reilly, supra.* There the courts of one county within our state had no jurisdiction over a child who was not present in the county at the time the action was instituted, but who *was present* in the Commonwealth. In this case, the child was not even within our borders at the time the writ was filed. Under these circumstances, we cannot find that the lower court had jurisdiction to determine the issue.

The order of the lower court is vacated and the action is dismissed.

WATKINS, P.J., and JACOBS, J., join in this opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

———

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

I agree that Scott was not a "resident" of or "domiciled" in Pennsylvania. The difficulty I have with the lead opinion is that it makes "present" mean "present on the day the petition was filed." I think it means, "present on the day the petition was heard." To hold otherwise

will, I fear, simply encourage a parent to detain a child until the prothonotary's office opens and a petition can be filed.

Although, in my view, the court below did have jurisdiction, it should have chosen not to exercise that jurisdiction by dismissing the father's petition and leaving him free to apply to the New Jersey court for a change of custody as Scott's best interests appeared to that court to demand.

The propriety of dismissing the petition was indicated in *Irizarry Appeal,* 195 Pa. Superior Ct. 104, 169 A.2d 307, *cert. denied* 368 U. S. 928 (1961). There the facts were as follows: The father and mother of two boys were lifelong residents of Puerto Rico. When they were divorced the Puerto Rico court awarded custody of the boys to the father. The mother moved to Delaware County, Pennsylvania, and married a member of the Delaware County bar; the father remained in Puerto Rico, and also remarried. Twice he sent the boys to visit their mother; the third time he sent them the mother kept them, and, with her husband representing her, filed in the Delaware County Court a petition for their custody. The father appeared by counsel and challenged the court's jurisdiction. The court held it had jurisdiction and on the father's appeal this court affirmed. In doing so, however, this court said (per WATKINS, J.): *

"There is merit in the contention of [the father] that the extension of the rule in the *Schofield* case [*Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A.2d 437 (1953)] may well invite cases of legalized abduction and may result in the inclusion in custody orders of injunctive restriction on visitation.

"And too, what was said in 4 A.L.R. 2d 7, at pg. 15 [Annot., Jurisdiction to Award Custody of Child

---

*WRIGHT, J., would have quashed the appeal; MONTGOMERY, J., dissented.

Having Legal Domicil in Another State]: 'Generally where a court of a state is passing upon its own jurisdiction to award custody of a child that is physically present, though domiciled elsewhere, it is likely to be motivated by the doctrine of parens patriae and to proceed to decide for itself what is for the best interests of the child, and if there is in existence a valid judgment of another state awarding such custody, to give at least lip service to the binding effect thereof by limiting the court's consideration of the merits to conditions which have changed since that foreign judgment was rendered—all too frequently such changed conditions being found to exist in favor of a local citizen,' is especially pertinent here, where one of the interested parties, the husband of the petitioner, is an attorney-at-law and as such an officer of the court. The hearing on the merits should be conducted with the above comments in mind." *Id.* at 109-110, 169 A.2d at 309-310.

These remarks are pertinent here. While the father did not abduct Scott, by keeping him he both violated the visitation agreement and ignored an injunction entered by the New Jersey court.

After examining numerous cases the author of the annotation in 4 A.L.R. 2d, *supra,* concluded:

"In a few cases, notably those from the state of Washington, it has been the policy of courts, on finding the child within its borders but domiciled in another state, not to decide the question of proper custody on the merits—barring exceptional cases of temporary custody arising out of immediate emergency—but to grant or remand the child to the last lawful custodian without prejudice to the claimant applying to the courts of the state of domicil for a change of custody, as the best interests of the child may appear to demand.

"It is submitted that the adoption of such a policy by the courts generally would tend to discourage kid-

napping by parents or evasion of the jurisdiction of the domicil by physical removal elsewhere. To be sure, the courts generally profess to condemn such conduct, but so long as a party has reason to believe that he may fare better in a foreign court, the assumption of jurisdiction by foreign courts will tend to encourage the practice." 4 A.L.R. 2d at 15.

This statement of policy, which is at least implicit in *Irizarry Appeal, supra,* should have been followed here. Nor is this conclusion inconsistent with Scott's best interests. Certainly his best interests must be our principal concern. The New Jersey Court, however, was neither distant nor uncivilized. One may be sure that it would have been diligent in deciding what Scott's best interests demand. Furthermore, those interests are "hardly served by fleeing sheriffs, dodging process, and flouting law." Note, Jurisdictional Bases of Custody Decrees, 53 Harv. L. Rev. 1024, 1030 (1940) (footnote omitted). It is futile to admonish young people to respect the law if we do not respect it ourselves. Scott is 14 and must understand his position. His father has set him a poor example indeed. I think we should make it plain that the father's petition will not be heard, whether it is filed during one of Scott's visits, or a day or so before Scott arrives.

CERCONE, J., joins in this opinion.

———

DISSENTING OPINION BY VAN DER VOORT, J.:

I disagree with our Court's decision to vacate the Order of the lower court and to dismiss the action.

Since the mother of the minor child Scott was (and presumably still is) a resident of New Jersey, and since the mother had been awarded custody of the child (in a New Jersey proceeding held on November 30, 1971), the lead opinion would find that the child was both a resident and a domiciliary of New Jersey, and therefore would find that Pennsylvania lacks jurisdiction. The lead

opinion cites *Swigart v. Swigart,* 193 Pa. Superior Ct. 174, 163 A.2d 716 (1960) and *Commonwealth ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649, 29 A.2d 363 (1942) as authority for its position that "the child of divorced parents assumes the residence and domicile of the parent who is awarded custody." I believe that this is a misinterpretation of the law. Neither *Swigart* nor *Camp* holds, or even states as dictum, that the child of divorced parents assumes the *residence* of the parent who has been awarded custody. I believe that the correct rule of law is that jurisdiction follows either the domicile of the child or the residence of the child, and that the child of divorced parents acquires the domicile, but not necessarily the residence, of the parent who has been awarded custody. *Irizarry Appeal,* 195 Pa. Superior Ct. 104, 108, 169 A.2d 307 (1961), cert. denied 368 U.S. 928 (1961) ; *Swigart, supra; Camp, supra.* Residence of a child in this state gives our courts jurisdiction, *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951), and since our Supreme Court has defined "residence" as "a tarrying place for some specific purpose of business or pleasure,"[1] *Lesker Case,* 377 Pa. 411, 418, 105 A.2d 376, 380 (1954), I believe that the child Scott

---

1. The lead opinion relies on the Restatement (Second) of Conflict of Laws, §79, for three instances in which a court may exercise jurisdiction to determine the proper party to have custody of a child: (1) when the child is domiciled within the state, (2) when the child is present within the state, (3) when the controversy is between two or more persons subject to the jurisdiction of the state. Our state has not yet adopted §79 as the law of Pennsylvania; however, the Restatement Second does represent a clearer statement of our law than do those cases which have dealt with this subject. Our cases have found jurisdiction based upon a child's "residence" in this state, and have defined "residence" as being, essentially, presence within our borders. The Restatement Second goes right to the point in stating that the mere presence of a child in a state is sufficient to confer jurisdiction.

in this case was a resident of Pennsylvania for purposes of habeas corpus jurisdiction. Since I believe that Scott was residing in Pennsylvania even though he was only here on a short vacation, I would find that the lower court has jurisdiction to hear the case.

I differ from the lead opinion's position in one further respect: I do not believe that the fact that the petition for habeas corpus relief was filed before the child was actually present in Pennsylvania requires us to find that the lower court improperly exercised jurisdiction. The boy Scott was supposed to begin one of his periodic visits with the father on Friday, July 20, 1973, but appellant, the boy's mother, called to say that the visit would be delayed so that Scott could go on a picnic that weekend. Although the habeas corpus petition (which stated: "[t]he child is presently residing with Petitioner") was filed by Mr. Blank's attorney on Friday, July 20, 1973, and Scott did not actually enter Pennsylvania until Sunday, July 22, 1973, the petition was not presented to the lower court judge, and was not signed by that judge, until Monday, July 23, 1973. Furthermore, the child was present in Pennsylvania at the time service of process was effected on the mother in New Jersey, and at the time the hearings were held. The important point for us to consider is that the lower court received the *authority* to hear the case the moment the child entered Pennsylvania, but that this power—this "jurisdiction"—was not actually exercised by the lower court until some affirmative act was performed—until the trial judge signed the writ. I would find that the lower court did not perform any act in exercise of its jurisdictional powers until after the child was present in Pennsylvania, and that the lower court therefore acted properly in hearing argument on the petition.

The lead opinion cites *Commonwealth ex rel. Teitelbaum v. Teitelbaum,* 160 Pa. Superior Ct. 286, 50 A.2d 713 (1947), for the position that the lower court lacked

jurisdiction due to the fact that Scott was not in Pennsylvania at the time the petition for habeas corpus relief was filed by the father's attorney. The court in *Teitelbaum* stated: "[t]he jurisdiction of the court attached on September 18, 1945, when the original writ was *issued*." 160 Pa. Superior Ct. at 288 (emphasis added). This statement hardly supports the lead opinion's position that jurisdiction attaches at the time a petition for habeas corpus relief is filed; on the contrary, the statement supports my position that jurisdiction in a habeas corpus proceeding attaches at the time the writ is signed by the judge—which is the time when the writ "issues".

The lead opinion also cites *Reilly v. Reilly*, 219 Pa. Superior Ct. 85, 280 A.2d 639 (1971). In that case, the father had custody of the child in Cumberland County, but the mother brought a habeas corpus action in Blair County, the county in which the child had previously resided. Since both parents and the child were clearly residents and domiciliaries of Pennsylvania, there was never any question that Pennsylvania courts had jurisdiction over the matter; the only issue was which county, Blair or Cumberland, was the proper venue for the action. In an opinion by JACOBS, J., our Court determined that Cumberland County, the county into which the child had been taken by the father, was the proper venue for the action—"[t]he fact that control of the child was gained by trick [was] of no import." 219 Pa. Superior Ct. at 90. Although *Reilly* dealt with venue rather than jurisdiction, the analogy is plain. Regardless of how a child comes into a county, that county is the proper venue for a habeas corpus proceeding concerning that child; similarly, regardless of how a child comes into Pennsylvania, our courts have habeas corpus jurisdiction over that child. Furthermore, nothing in *Reilly* requires us to find in the case before us that the child must be present in Pennsylvania before a petition for habeas corpus may be *filed*: the court there merely said that "before a court

354

in a judicial district has the power to determine a writ, the person must be restrained or confined in that district." 219 Pa. Superior Ct. at 89. The court was, of course, referring to venue and not to jurisdiction; moreover, the lower court in the case before us took no action —did not "determine" the writ—until after the child Scott was present in the Commonwealth. *Reilly* therefore does not support the lead opinion's position.

Along with the concurring and dissenting opinion in this case, I believe that the best interests of the child in any custody case must always be our principal concern. I disagree, however, with the feeling that the child's best interests in this case lie in punishing the father for the "bad example" he has set by "fleeing sheriffs, dodging process, and flouting law." Scott's father did none of these things, but merely sought a new and more favorable determination of custody, and sought this adjudication at a time and in the forum most convenient to himself. I believe that the father should hardly be chastised for his efforts to obtain legal custody of his son.

The record shows that the child, age fourteen at the time of the proceedings, has a clear preference for living with his father. Though he loves his mother, Scott feels that his mother does not stick up for him when his stepfather discriminates against him. On the other hand, Scott loves his father and seems also to like his stepmother very much. Moreover, though Scott has been living with his mother and stepfather in New Jersey for the past several years, most of his closest friends live near his father's house in Pennsylvania, and Scott indicated that he would much prefer attending a public school with his friends in Pennsylvania to attending the military school which his mother and stepfather have been sending him to in New Jersey. Mrs. Rutledge had an opportunity to appear at the custody hearing and present evidence to show that the best interests of the child would

be advanced if the child remained with her. Mrs. Rutledge chose not to appear, and the trial judge, after a diligent effort to ascertain the facts, concluded from the evidence presented that the best interests and permanent welfare of the child would be best advanced if he were to live with his father. Though this Court has broad powers of review in custody matters, *Commonwealth ex rel. Gifford v. Miller,* 213 Pa. Superior Ct. 269, 248 A.2d 63 (1968), we should give great weight to the decision of the lower court judge who heard the testimony and personally observed the parties. Looking at the more stable home life that Scott would probably enjoy with his father and stepmother, and at the boy's stated preferences, I would find that the best interests of the child in this case would be advanced by affirming the decision of the lower court granting custody to the father. Since I also believe that the lower court did have jurisdiction to hear the case, I must conclude that our Court's decision to vacate the order of the lower court and to dismiss the action was incorrect.