396 A.2d 450

**In re Custody of Cyril Edward SAGAN, a minor.**

**Appeal of Rose Ann SAGAN.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Dec. 28, 1978.

386

Thomas C. Murcko, Pittsburgh, for appellant.

Frank G. Verterano, New Castle, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal is from an order of the Court of Common Pleas of Lawrence County, awarding custody of Cyril Edward Sagan to his father. Appellant claims that the lower court lacked subject matter jurisdiction over the person of Cyril, and consequently had no power to issue its order; alternatively, she claims that the lower court erred by awarding custody to her husband. For reasons which follow, we vacate the lower court order and dismiss the case.

Mr. and Mrs. Sagan, natural parents of Cyril Edward Sagan, were married in 1960, and were ultimately divorced in May, 1976. They had five children, whose ages at the time the petition for custody was filed in the court below ranged from six to fourteen years. Cyril is currently ten years old. In 1970, the family located at Ithaca, New York.

In September, 1973, Mr. Sagan left the family's Ithaca address and all five children continued to reside at Ithaca.

In September, 1974, Mrs. Sagan instituted custody proceedings in the Family Court of Tompkins County, New York. Following three hearings, at each of which Mr. Sagan appeared, that court on December 24, 1975, awarded custody of all five children to Mrs. Sagan. Mr. Sagan did not appeal from that order, and it is currently in effect.

On various occasions after 1975, Mr. Sagan visited his children at Ithaca; at other times, and only with Mrs. Sagan's permission, certain of the children visited Mr. Sagan at his Lawrence County home. On the evening of September 1, 1976, Cyril arrived in Lawrence County, with Mrs. Sagan's permission and at Mr. Sagan's request, for a temporary weekend visit. By prearrangement, Cyril was to be returned to Ithaca for school by September 7th. On September 2, 1976, Mr. Sagan filed a Petition for Custody in the Lawrence County Court of Common Pleas and has since kept Cyril with him.

On September 8, 1976, Judge LYON issued a Rule to show cause why Mr. Sagan's petition for custody should not be granted. On September 13, 1976, a response to the Petition was filed in Mrs. Sagan's behalf. Hearings were conducted in November and December, 1976, and on February 10, 1977, the Court awarded custody of Cyril to Mr. Sagan. It is from that order that this appeal is taken.

■■■ Appellant initially claims that the lower court lacked subject-matter jurisdiction over the person of Cyril, and was therefore powerless to determine the right to custody as between the parties. We agree. In order to have the power to determine the right to custody as between litigants, a court must have subject-matter jurisdiction over the person of the child. *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 559, 80 A.2d 829, 832 (1951). Subject matter jurisdiction can be based either on the domicile or

residence of the minor child. *Commonwealth ex rel. Logan v. Toomey,* 241 Pa.Super. 80, 84, 359 A.2d 468, 470 (1976); *Swigart v. Swigart,* 193 Pa.Super. 174, 177, 163 A.2d 716, 718 (1960).[1] The domicile of a minor child whose parents have been divorced is deemed to be that of the parent who has been awarded custody. *Irizarry Appeal,* 195 Pa.Super. 104, 108, 169 A.2d 307, 309, *cert. denied,* 368 U.S. 928, 82 S.Ct. 363, 7 L.Ed.2d 191 (1961); *Commonwealth ex rel. Teitelbaum v. Teitelbaum,* 160 Pa.Super. 286, 288, 50 A.2d 713, 714 (1947). *See Liggitt v. Liggitt,* 253 Pa.Super. 126, 131, 384 A.2d 1261, 1263 (1978); *Reilly v. Reilly,* 219 Pa.Super. 85, 87, 280 A.2d 639, 640 (1971). His or her residence, on the other hand, cannot be so categorically determined.

When Mr. Sagan filed the September 8, 1976 petition in the court below for custody of Cyril, Mrs. Sagan, who had been awarded custody by a New York court order, was domiciled in New York. Lower Court Opinion at 2. Consequently, for purposes of determining whether the lower court had jurisdiction, Cyril was as a matter of law domiciled in New York on that date. It is true that because custody orders are always subject to review and modification by the issuing court where the child's best interest so demands, *Commonwealth ex rel. Hickey v. Hickey,* 216 Pa. Super. 332, 337, 264 A.2d 420, 422 (1970); *Irazarry Appeal,* 195 Pa.Super. at 108, 169 A.2d at 309, we are not *required* to give full faith and credit to custody decrees of sister states. *See Commonwealth ex rel. Logan v. Toomey,* 241 Pa.Super. at 85, 359 A.2d at 470. However, by the same token we are

---

1. In *Toomey,* we extended the jurisdictional requisites, applicable to custody cases instituted by habeas corpus petition to virtually all forms of custody proceedings. 241 Pa.Super. at 84, 359 A.2d at 470.

We emphasize that subject matter jurisdiction is determined as of the time the petition for custody is filed. *See Commonwealth v. Ryan,* 459 Pa. 148, 157, 327 A.2d 351, 355 (1974) (trial court lacked jurisdiction to enjoin striking employees where there had been no strike in progress on the date the action was *filed* ). *Commonwealth ex rel. Blank v. Rutledge,* 234 Pa.Super. 339, 346, 339 A.2d 71, 72–74 (1975) (principles of *Ryan* deemed applicable to all custody cases. *But see id.* at 352, 339 A.2d at 76 (Van der Voort, J., dissenting).

*not precluded* from doing so, especially as herein for purposes of determining the minor child's domicile.[2]

Because Cyril was domiciled in New York when Mr. Sagan filed his petition, the court below had no jurisdiction to award Cyril's custody unless Cyril was in fact a Pennsylvania resident on that date.[3] Appellee would have us equate residence with mere physical presence within the jurisdictional borders, without reference to the understanding which the parents have with respect to the duration of that presence. Brief for Appellee at 3. However, we are unwilling to do so.

In *Irazarry Appeal,* 195 Pa.Super. at 109, 169 A.2d at 310, the mother of a minor child, whose custody had previously been awarded to his father in Puerto Rico, filed a petition in Pennsylvania for the child's custody 13 days after he arrived there for a prearranged visit. This court found that the child was a Pennsylvania resident, despite his being merely a visitor, and that consequently the lower court had jurisdiction to determine the matter of his custody, because of Pennsylvania's paramount interest in the child's welfare. *Id.,* 195 Pa.Super. at 108–09, 169 A.2d at 309. However, we directed the lower court on remand to consider that, *inter alia,* relitigation of the matter "may well invite cases of legalized abduction and may result in the inclusion in custody orders of injunctive restriction on visitation." *Id.,* 195 Pa.Super. at 109, 169 A.2d at 309.

■ The experience of recent years, however, has demonstrated that the most appropriate way to reconcile this dilemma of the state's *parens patriae* concern for the wel-

2. Since subject matter jurisdiction is determined as of the date when the petition for custody was filed, we choose to determine young Cyril's domicile on the basis of the only custody order then in existence, namely that of the New York court.

3. The lower court stated, without explanation, that Cyril was "presently residing" in Pennsylvania. Lower Court Opinion at 6. Whether or not that be the case the court should have focused instead on whether Cyril was a Pennsylvania resident as of September 2, 1976, when the petition was filed, which was more than five months earlier. *See* Note 1 *supra.*

fare of those children living within its boundaries, *e. g.,* *Commonwealth ex rel. Blank v. Rutledge,* 234 Pa.Super. 339, 345, 339 A.2d 71, 73 (1975); *Friedman v. Friedman,* 224 Pa.Super. 530, 535, 307 A.2d 292, 295 (1973); *Irazarry Appeal,* 195 Pa.Super. at 108–09, 169 A.2d at 309, on the one hand, and "legalized abduction" on the other is to restrict jurisdiction.[4] In addition, we are convinced that absent extraordinary circumstances, Pennsylvania has no inherent concern for those children who are domiciled elsewhere and temporarily present solely for the purposes of visit. Consequently, we hold that unless there is evidence that a minor child has been abandoned or physically abused, where another state's court has awarded custody to the parent domiciled in that other state, and that parent has allowed the child to *visit temporarily* with the other parent in Pennsylvania, the child is not a resident of Pennsylvania, nor does Pennsylvania have a sufficient interest in that child's well being to merit the assumption of jurisdiction by its courts to relitigate the matter of custody.

■ Because there is no evidence, nor has counsel for appellee alleged that Cyril has been abandoned or abused in any way, and because there was an understanding between the parents that his visit in Pennsylvania was only temporary, the court below was without jurisdiction to relitigate the matter of custody.[5]

Order vacated.

4. See the recently adopted Uniform Child Custody Jurisdiction Act, Pa.Stat.Ann. tit. 11, §§ 2301–2325 (Purdon Supp.1978).

5. Unlike the situation where there has been no formal adjudication of the custody of the child, *see, e. g., Liggitt v. Liggitt,* 253 Pa.Super. 126, 129, 130 n.3, 384 A.2d 1261, 1262, 1263 n.3 (1978), it is *not* irrelevant to our decision that Mr. Sagan proceeded in apparent disregard to the New York court order.

Note that the result would be the same under the recently enacted Uniform Child Custody Jurisdiction Act. *See* Pa.Stat.Ann. tit. 11, § 2304(b) (Purdon Supp.1978), which provides that unless the child has been abandoned or physically abused, "physical presence in [Pennsylvania] of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a [Pennsylvania] court . . . to make a child custody determination."

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.