423 A.2d 739

JOSEPH E. H., Appellee,

v.

JANE E. H., Appellant.

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Dec. 5, 1980.

Henry A. Hudson, Jr., Greensburg, for appellant.

Thomas J. Godlewski, Greensburg, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court lacked jurisdiction to entertain appellee's petition for redetermination of custody of their minor son. Although we disagree, we nevertheless vacate the order of the lower court and remand for further proceedings consistent with this opinion.

On November 11, 1977, appellee–father instituted habeas corpus proceedings in the Westmoreland County Court of Common Pleas seeking custody of the parties' minor son.

At that time the parties, then husband and wife,[1] were living separately in Westmoreland County, and appellant–mother maintained custody of their son. After conducting several hearings the lower court, on July 19, 1978, issued an order granting custody of the child to the mother and allowing the father visitation for two hours each Saturday. Visitation was to be supervised for the first three Saturdays and unsupervised thereafter.[2] Immediately before the father's first unsupervised visitation was to take place, the mother and son left their home in Westmoreland County and took up residence in Maryland. The father commenced contempt proceedings against the mother for her alleged violation of the court's visitation order, and on August 24, 1978, the court issued a bench warrant for the mother's arrest. The warrant apparently was not executed, and no further actions were taken in the case until August 15, 1979. On that date the father filed a "Petition for Rehearing" in which he sought a redetermination of custody of the parties' son. The court scheduled a hearing on the father's petition for September 14, 1979. On September 12, 1979, the mother filed preliminary objections to the father's petition, alleging that the court was without jurisdiction of the matter because she and her son were residents of Maryland. The court conducted a hearing on September 14, as scheduled, at which it considered the jurisdictional issue and heard testimony from the father on the merits of his petition for redetermination of custody. Neither the mother nor her counsel appeared, although it is undisputed that she had notice of the hearing. The lower court dismissed the mother's preliminary objections and awarded custody of the parties' son to the father. From these orders the mother has taken this appeal.

1. The parties apparently have since obtained a divorce, although the record does not indicate where or when a decree in divorce was granted.

2. The lower court provided for supervised visitation at first "[s]o as to lessen the traumatic affeċt [sic] of the child being with his father who he has not been with that frequently." Order of July 19, 1978.

■ The mother contends that the lower court was without jurisdiction to entertain the father's petition for redetermination of custody because both she and her son are residents of Maryland.[3] Jurisdiction in the present case is governed by the Uniform Child Custody Jurisdiction Act, Act of June 30, 1977, P.L. 29, No. 20, § 1 et seq., 11 P.S. § 2301 et seq. (Supp. 1980–81) (the Act). Section 4(a) of the Act provides that

[a] court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

.    .    .    .    .

(2) it is in the best interest of the child that a court of this State assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State; and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . .

11 P.S. § 2304(a). Additionally, section 4(c) of the Act provides that "[p]hysical presence of the child, while desira-

---

3. The mother contends also that by considering her preliminary objections at the September 14 hearing rather than at regular monthly argument court in October, 1979, the lower court deprived her of the opportunity to present argument in support of her objections to jurisdiction. We disagree. It is true, as the mother points out, that pursuant to Rule W501 of the Rules of Civil Procedure of the Westmoreland County Court of Common Pleas, "Argument Lists automatically shall include without praecipe all preliminary objections ... filed before the thirtieth (30) day preceding the date of argument." However, this rule does not purport to establish the only manner in which preliminary objections may be heard, and we do not believe that it disenables the court from considering preliminary objections at a previously scheduled hearing of which both parties have notice. Moreover, we cannot agree that the court's action deprived the mother of her "right to argue any motion" as set forth in Pa.R.Civ.P. 211. The mother voluntarily chose not to appear at the September 14 hearing, and in so doing deliberately flouted the order of the lower court scheduling hearing for that day. Under these circumstances we find no error in the procedure followed by the lower court.

ble, is not a prerequisite for jurisdiction to determine his custody." 11 P.S. § 2304(c).

In *In matter of D.L.S. and J.L.S.,* 278 Pa.Super. 446, 420 A.2d 625 (1980), this Court held that the lower court had properly exercised jurisdiction under section 4(a)(2) of the Act. In that case the father instituted an action in Pennsylvania seeking custody of the parties' two minor children after the mother had taken the children from the parties' Pennsylvania home and established residence in Florida. The Court found that "[b]oth the parents and the children retain a significant connection with Pennsylvania because of the length of their residence here." *Id.,* 278 Pa.Super. at 450, 420 A.2d 625 at 627. (All had been lifetime residents of Pennsylvania until the mother and children moved to Florida.) Additionally, the Court observed that

[e]vidence concerning the children's present and future care, protection and training will have to be gathered almost entirely from Pennsylvania since [the father] continues to live and work in Pennsylvania and the bulk of the witnesses who know the parties well and know of their past care of the children are located here.

*Id.* Accordingly, the Court concluded that "the best interest of the children will be served by finding jurisdiction in the courts of this Commonwealth." *Id.*

Similarly, in the present case the requirements for jurisdiction set forth in section 4(a)(2) of the Act have been met. Both the parents and the child have a significant connection with Pennsylvania because of the length of their residence here.[4] Their connection with this state is strengthened by the fact that the parties had previously litigated the question of custody of the child here, and were subject to an order of court concerning custody and visitation. Moreover, there can be no question that "substantial evidence concern-

4. Although the record does not reveal the exact length of the parties' residence here, it does indicate that both parties had lived in Pennsylvania for at least several years before the commencement of these proceedings. The parties' son was born in Pennsylvania and lived here continuously until the mother moved with him to Maryland. The father continues to reside in Pennsylvania.

ing the child's present or future care, protection, training, and personal relationships" is available in Pennsylvania. 11 P.S. § 2304(a)(2)(ii). As in *In Matter of D.L.S. and J.L.S.,* *supra,* the father continues to live and work in this state, and certainly many of the witnesses who are qualified to testify regarding the parties' fitness and ability to have custody reside here. Accordingly, we hold that the lower court properly assumed jurisdiction and dismissed the mother's preliminary objections.[5]

■ Despite our disagreement with the mother's jurisdictional contention, we believe that she should be given another opportunity to address the merits of the father's petition for redetermination of custody. The mother's failure to appear at the September 14 hearing appears to have resulted, at least in part, from her counsel's confusion regarding the proper procedure for contesting the jurisdiction of the lower court. We do not believe that a procedural default arising from such confusion should preclude a parent from presenting evidence on such a sensitive and important matter as the modification of a custody decree. Although we do not condone the conduct of the mother in shunning the

5. We note additionally that the mother's challenge to jurisdiction is particularly disingenuous here, where the lower court found as a fact that she had left Pennsylvania "so as to frustrate the Order of this Court ordering visitation with the child by the father." We have repeatedly criticized the regrettable practice of removing children from one state for the purpose of avoiding that state's jurisdiction or availing oneself of the jurisdiction of a second state. *See, e. g., In re Sagan,* 261 Pa.Super. 384, 396 A.2d 450 (1978); *Trefsgar v. Trefsgar,* 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Blank v. Rutledge,* 234 Pa.Super. 339, 339 A.2d 71 (1975). In *Commonwealth ex rel. Scholtes v. Scholtes,* 187 Pa.Super. 22, 142 A.2d 345 (1958), we stated that "[a] court should not permit a party to short–circuit a legitimate proceeding by removing the subject matter of the litigation from the jurisdiction of the court properly acquired." *Id.,* 187 Pa.Super. at 25, 142 A.2d at 347. Moreover, one of the general purposes of the Uniform Child Custody Jurisdiction Act is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." 11 P.S. § 2302(a)(5). *See also* 11 P.S. § 2309 (authorizing courts of this state to decline to exercise jurisdiction in cases in which a petitioner for custody has wrongfully taken the child from another state or has violated any provision of a custody decree of another state).

September 14 hearing, we are ever mindful of the fundamental fact that "in all custody disputes, the best interests of the child must prevail; all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well being." *Garrity v. Garrity*, 268 Pa.Super. 217, 221, 407 A.2d 1323, 1325 (1979). *Cf. Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977). Accordingly, we vacate the order of the lower court and remand this case to enable the mother to appear and address the merits of the father's petition for redetermination of custody.

Order vacated and case remanded for further proceedings consistent with this opinion.

CAVANAUGH, J., filed a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

Based on the facts in the record, I am in complete agreement with the majority's reasoning that the lower court had jurisdiction in this matter. I also agree that this case should at least be remanded to enable the mother to appear and address the merits of the father's petition for redetermination of custody.

However, since the record may not contain relevant facts due to what I believe to be a procedural irregularity, I would expand the scope of the issues on remand to provide the appellant with an opportunity to argue and present evidence on the issue of jurisdiction in the lower court.

Instantly, the appellant had notice that a hearing was scheduled September 14, 1979. However, Westmoreland County Rule W501 provided that her preliminary objections as to jurisdiction would be argued weeks later. Appellant, therefore, relied on Rule W501's provisions as to the time when argument on her preliminary objections would be heard. Nevertheless, the lower court decided appellant's preliminary objections without notice to appellant that Rule W501 would not be followed and without notice that appel-

lant's preliminary objections would be considered on September 14th, the time when a hearing on the merits of the custody issue was originally scheduled. On September 14th the court heard argument from appellee's counsel on the issue raised by the preliminary objections; appellant and her counsel did not appear, thus no evidence or argument by appellant was presented. Since appellant did not have notice that her preliminary objections would be considered at a time earlier than that provided by Rule W501, appellant was denied procedural due process by the lack of such notice. The lack of notice may have prejudiced appellant by preventing her from presenting evidence and argument on the jurisdiction issue. I would, therefore, expand the scope of remand to allow appellant the opportunity to argue and present evidence on the jurisdiction issue.