J. S14031/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| S.O., | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| v. | : | No. 2871 EDA 2019 | |
| | : | | |
| D.W. AND F.W. | : | | |

Appeal from the Order Entered September 11, 2019,
in the Court of Common Pleas of Delaware County
Civil Division at No. CV-2018-001256

BEFORE:  BOWES, J., KING, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 08, 2020**

S.O. appeals from the September 11, 2019 order entered in the Court of Common Pleas of Delaware County that denied her emergency petition for legal and physical custody of J.W., female child born in March 2008 (the "Child"), for want of standing.  We affirm.

The trial court set forth the following:

> After the filing of an Emergency Custody Petition in this matter, the [trial] court ordered an investigation by Delaware County Children and Youth Services (CYS).  As a result of the investigation, at a hearing held October 4, 2018, the court barred [appellant] from having any contact with [the Child].
>
> At the [trial] court's March 27, 2019 hearing on [a]ppellant's standing to pursue legal and physical custody of the [Child], the [trial] court heard testimony from Ms. Maura Gray, a supervisor at CYS. Ms. Gray had conducted a forensic interview of [the Child] and determined that it "was not in [the Child's]

best interest to see [appellant]." There was concern regarding the relationship between [the Child and appellant] because [appellant] had taken the [C]hild on trips to Florida without her parents' knowledge. In addition, [the Child] reported that she would often go to one of [appellant's] friend's home[s] who was subsequently convicted of sexual abuse of children. [The Child] would have sleepovers there. The friend had a daughter [the Child's] age. [The Child] did not report any abuse that occurred in the home. In addition, [the Child] reported that she often slept with [appellant] and missed cuddling with her. Ms. Gray testified: ". . . it was, you know a little bit alarming coming from a 10-year-old. . . [.]" It was also placed on the record that there was a letter sent to the [trial] court in September of 2018 indicating that [appellant] had made a statement to a police officer in response to something that he told her regarding the [C]hild stating, "I guess this is why people kidnap kids."

[D.W. ("Mother") and F.W. ("Father")] are married and reside [in] Delaware County, Pennsylvania. They are the parents of six children all of whom currently live with them. [The Child] is the fourth of their six children. [The Child] was born [in] March [of] 2008 and is currently 11 years old and in the fifth grade. The family moved to [their current residence with Mother's mother] when [the Child] was approximately one year old.

At the time of the June 5, 2019 hearing in this matter, [a]ppellant testified that she was the 28-year-old neighbor of [Mother and Father]. Appellant's residence had three bedrooms and the residents included her mother, her sister, and herself. There was no designated bedroom for [the Child] but there was a finished basement with designated space for [the Child]. Appellant testified: "she would sleep with me often at nights, but she did have her own bed."

At the June evidentiary hearing, there were significant differences between the parties' testimony on many issues including the length of time that [the Child] stayed with [a]ppellant. Appellant testified that in the

beginning, "[I]t was more so they asked me to take her to help them out. It wasn't like can you take her for this amount of time or that amount of time." The parties had vastly different testimony as to the length of time [appellant] cared for [the Child]. [Mother] testified that [appellant] overestimated the time [the Child] stayed with [appellant].

[Mother] testified that although [appellant] was buying school supplies and school clothes for [the Child,] there was no need for her to do so because [Mother] always had supplies and clothing for her at her home. [The Child] "wanted to use the pretty frilly things that [appellant] bought her and not the stuff that [Mother] bought her or she would use both."

[Father] testified that he attended almost all of [the Child's] doctors' appointments, from the time that [the Child] was 4-9 years old. When [Father] was asked whether over the years, that [the Child] stayed and lived with [appellant] was that with his permission, he responded "No." He testified that he and [Mother] scheduled doctor and dentist appointments and then permitted [appellant] to take [the Child] to the doctor visits. When asked on cross-examination whether [appellant] was acting in a parental role, he responded: "[N]o, I seen [sic] it as a friend, I didn't -- we were her parents. I did not expect or see any of that coming my way. No, I did not."

[Appellant] testified at length as to the close relationship she had with [the Child]. She testified on direct that she financially supported the [C]hild. On cross-examination, she testified that the only request for monies she made of [Mother and Father] was for reimbursement of camp. In direct testimony, [appellant] testified that the doctors of CHOP knew her to be the [C]hild's parent. On cross-examination, [appellant] testified that they knew she was a family friend. [Appellant] testified that she never had a physical health insurance card for [the Child] but she had a picture of the card. [Appellant] testified that [the Child] "would sleep with me often at nights, but

> she did have her own bed . . . [s]he would be scared
> to sleep by herself, having bad dreams or scared."
> [Appellant] testified that [the Child] slept with her in
> the same bed until she was nine years old.

Trial court opinion, 11/25/19 at 2-5 (record citations omitted; some brackets in original).

On September 11, 2019, the trial court entered the order denying appellant's emergency petition for legal and physical custody of the Child for want of standing. Appellant filed a timely notice of appeal on October 4, 2019, but failed to simultaneously file and serve a concise statement of errors complained of on appeal as required by Pa.R.A.P. 1925(a)(2)(i). **See** Pa.R.A.P. 1925(a)(2)(i) (requiring concise statement be filed and served with notice of appeal in children's fast track appeals). On October 9, 2019, the trial court then ordered appellant to file a concise statement. Appellant filed her concise statement on October 23, 2019. The trial court then filed an opinion.

At the outset, we note that this court has recognized that the failure to file a Rule 1925(a)(2)(i) concise statement contemporaneously with the notice of appeal constitutes a defective notice of appeal to be disposed of on a case-by-case basis. **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa.Super. 2009). Where there has been substantial compliance with the rules and where there is no allegation of prejudice, dismissal is not appropriate. **See id**. Here, despite filing a defective notice of appeal, appellant has substantially complied

with the rules. Additionally, Mother and Father do not allege prejudice.

Therefore, we will not dismiss this appeal

Appellant raises the following issue for our review:

> Did the trial court abuse its discretion and err as a matter of law in determining that there was insufficient evidence or that the evidence presented at the hearing on June 5, 2019 was not clear and convincing to establish *in loco parentis* standing for [a]ppellant, pursuant to 23 Pa.[C.S.A.] § 5324(2)[?]

Appellant's brief at 3.

> Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017). The concept of standing is vital in ensuring that cases are presented to the court by an individual who has a genuine, and not merely a theoretical, interest in the matter. Thus, the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand. *D.G. v. D.B.*, 91 A.3d 706 (Pa. Super. 2014). *In M.W. v. S.T.*, 196 A.3d 1065 (Pa. Super. 2018), our Court emphasized:
>
>> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.
>
> *Id.* at 1069 (citation omitted).

*M.S. v. J.D.*, 215 A.3d 295, 598 (Pa.Super. 2019) (parallel citations omitted).

"Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents." ***Id.*** at 598-599. The Act, however, permits certain individuals to file a custody action, including "[a] person who stands ***in loco parentis*** to the child." 23 Pa.C.S.A. § 5324(2). Our supreme court has explained that:

> ***In loco parentis*** is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists. . . .
>
> The phrase "***in loco parentis***" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of ***in loco parentis*** embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties. The rights and liabilities arising out of an ***in loco parentis*** relationship are, as the words imply, exactly the same as between parent and child. The third party in this type of relationship, however, can not place himself ***in loco parentis*** in defiance of the parents' wishes and the parent/child relationship.

***C.G. v. J.H.***, 193 A.3d 891, 907 (Pa. 2018), quoting ***T.B. v. L.R.M.***, 786 A.2d 913, 916-917 (Pa. 2001).

In ***T.B.***, our Supreme Court instructed:

> The scope of review applied by an appellate court to a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. However, this broad scope of review does not vest an appellate court with the duty

> or privilege of making its own independent determination. An appellate court may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion.
>
> 786 A.2d at 916 (citations omitted). This scope of review applies to trial court decisions regarding standing. **See id.**; **J.F. v. D.B.**, 897 A.2d 1261, 1273 (Pa.Super.), **appeal denied**, 909 A.2d 1290 (Pa. 2006); **see also Silfies v. Webster**, 713 A.2d 639, 642 (Pa.Super. 1998); **J.A.L.**, 682 A.2d at 1318. In this connection, we note that, "[o]n factual matters, the hearing judge is far better able to assess credibility and weight of testimony than" an appellate court. **Reilly v. Reilly**, 280 A.2d 639, 640 (Pa Super. 1971). "[T]he ultimate test is 'whether the trial court's conclusions are unreasonable as shown by the evidence of record.'" **Silfies**, 713 A.2d at 642 (quoting **Moore v. Moore**, 634 A.2d 163, 168 n.4 (Pa. 1993)).

**C.G. v. J.H.**, 172 A.3d 43, 52 (Pa.Super. 2017) (parallel citations omitted).

Here, appellant claims that the trial court "disregarded testimony and evidence presented at the hearing" and "selected discrete portions of testimony" to conclude that she lacked standing. (Appellant's brief at 6-7.) Appellant then sets forth her selected discrete portions of testimony in an effort to persuade this court to reach a different result. We decline to do so. It was for the trial court to assess credibility and weigh the evidence. **See C.G.**, 172 A.3d at 52. In its opinion, the trial court stated that the testimony of the parties conflicted and it found that Mother and Father testified credibly. (Trial court opinion, 11/25/19 at 10-12.) Our review of the record

demonstrates that the trial court's conclusions are reasonable as shown by the evidence of record.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/20