## Weymers v. Weymers

*June S. Schulberg,* for plaintiff.
*Richard E. Rush,* for defendant.

SALMON, *J., Specially Presiding,* February 23, 1978 — This petition for a writ of habeas corpus seeking custody of minor children was filed in Allegheny County, Pennsylvania on August 24, 1977, at Number D-404 of 1974 Custody. It came on for hearing before the Honorable John G. Brosky of that court and on August 29, 1977, Judge Brosky entered an order transferring the case to the Court of Common Pleas of Beaver County for the reasons that:

1. Allegheny County has no jurisdiction over the parties;

2. The minor children have been residing in and have attended schools in Beaver County;

3. Respondent-petitioner and mother is now a resident of Kansas City, Missouri;

4. Beaver County "has the closest connection" and in Beaver County "significant evidence concerning the care, protection, training and personal relationships of the parties and the minors is most readily available."

The relator then presented his petition in this court reciting the action of Judge Brosky, obtained an order setting a hearing, and the matter came on for hearing before us.

This case did not originate with the present petition. In 1974, respondent-mother was domiciled in Allegheny County with the children. The children who are the subject of this action are Arthur Weymers, Jr., born March 7, 1966, and Crystal Weymers born September 7, 1968. At that time the relator and father, who is also the moving party in the instant proceeding, filed his action in Allegheny County. The matter was heard before the Honorable Louis J. Sparvero, Judge, who filed an opinion and order under date of October 25, 1974, giving custody to respondent-mother and specifying visitation rights of relator-father.

The petition presently before us by transfer order of Judge Brosky is the petition of mother-respondent, Sharron J. Weymers, praying that the father, Arthur W. Weymers, appear with the children and explain why he withholds custody from the mother. Her petition alleges that the children, as of August 24, 1977, the date of the petition, "reside with their mother in Kansas City, Missouri." She further alleges that the father "has abducted the children from their mother in contravention of

the aforesaid order" referring to the order by Judge Sparvero on October 25, 1974.

Father-respondent has filed an "Answer" and "Counterclaim." The answer avers that father-respondent had custody from January 29, 1977, to August 28, 1977, by virtue of an agreement written in longhand by or for the parties, without benefit of legal counsel, under date of February 3, 1977, wherein mother-petitioner gave custody to father-respondent subject to certain visitation rights in mother-petitioner, for a period "of not less than two years."

The "Counterclaim" avers that the children were taken against their will from the residence of father-respondent, and that mother-petitioner is "believed to be living in a relationship with a man out of wedlock, to the detriment of the minor children."

We observe that no process was issued out of this court. The case is here pursuant to the said order by Judge Brosky on August 29, 1977. Upon the opening of the hearing before us, we stated that our first concern is how this case reaches our court and whether we have authority under the law to hear and decide it on the merits. We asked counsel to enlighten us on these questions before we proceed to the merits. Father-respondent was present in person accompanied by his counsel, June S. Schulberg, Esq. Mother-petitioner was not present but was represented by her counsel, Richard E. Rush, Esq. The children were not present.

Father-respondent took the stand and testified that his wife voluntarily, and despite the order of Judge Sparvero, delivered custody of both children to him on January 28, 1977, and that he had them with him in Aliquippa, Beaver County, until June

24, 1977, when they went to their mother in Kansas City for a vacation; that they returned August 19, 1977, and were with him until August 24, 1977, when their mother took them without his permission and returned with them to Kansas City where they now continue to be so far as he knows.

This court of common pleas has jurisdiction to issue and hear writs of habeas corpus for custody of children: Act of May 25, 1951, P.L. 415, sec. 1, 12 P.S. §1901. Judge Brosky's court, of course, has the same jurisdiction. The Superior Court has held that while all common pleas courts have *jurisdiction* under the Act of 1951, supra, *venue* lies only in that county, or judicial district, wherein the relator is "confined." Reilly v. Reilly, 219 Pa. Superior Ct. 85, 89, 280 A. 2d 639 (1971). Venue also lies in the county where the person resides who has control over the child and can produce him: Reilly v. Reilly, supra, at page 90.

The opinion by Judge Jacobs in the Reilly case also says at page 87:

"It is true that the jurisdiction of the subject matter in a child-custody case, i.e., the right to custody of the child, follows either the domicile of the child or the residence of the child. Commonwealth ex rel. Camp v. Camp, 150 Pa. Superior Ct. 649, 29 A. 2d 363 (1942). Furthermore, when parents are divorced or separated, the child takes the domicile of the parent with whom he lives in fact. Commonwealth ex rel. Burke v. Burke, 168 Pa. Superior Ct. 578, 80 A. 2d 87 (1951). When a child either lives in Pennsylvania or is domiciled in the Commonwealth,Pennsylvania courts have jurisdiction to determine which parent is entitled to custody of the child."

The salient facts in this case are that Judge Sparvero awarded custody to the mother in 1974. In January or February, apparently by voluntary action of the parties, the mother delivered custody to the father who kept the children in his home in Beaver County from that date until June 24, 1977, when, again by agreement, they went to their mother in Kansas City. There they remained until August 19 when they returned to Aliquippa and remained until August 24, 1977, when the mother took custody, according to the father, "without his consent." They apparently now reside in Kansas City with their mother.

When this petitioner-mother filed the instant petition on August 24, 1977, in Allegheny County, she probably did so under the impression that that court had authority to hear the case because Judge Sparvero had entered his order in 1974 granting her custody, and what she was seeking at that moment was enforcement of Judge Sparvero's order. However, she was acting under a mistake of law because when she presented her petition neither parent and neither child was present in, or domiciled in, or under control of a person resident in Allegheny County. Allegheny County therefore had lost its authority to proceed and we agree with Judge Brosky's conclusion to that effect: Com. ex rel. Hickey v. Hickey, 216 Pa. Superior Ct. 332, 264 A. 2d 420 (1970); Reilly v. Reilly, supra; Com. ex rel. Laws etc. v. Laws, ____ Pa. Superior Ct. ____ 378 A. 2d 333 (1977).

The question remains as to the basis for Judge Brosky's authority to transfer the case to Beaver County. The Rules of Civil Procedure promulgated by the Supreme Court of Pennsylvania contain no reference to habeas corpus proceedings which

might be relevant to our problem. We have found no statute authorizing transfer from one county to another. An analogous problem existed in civil actions of trespass. Pa.R.C.P. 1006(e) now provides that a case shall not be dismissed for improper venue if there is a county of proper venue within the Commonwealth but shall be transferred to the appropriate court of that county. This established a new procedure in Pennsylvania, there having been no prior authority for such transfer. Unfortunately that rule is one of a series of rules governing assumpsit, trespass, ejectment, action to quiet title, replevin, mandamus and quo warranto, but not habeas corpus or custody actions: Official Note preceding Rule 1001; 1 Goodrich-Amram 2d, §1001:1, 428.

We are aware also of the Uniform Child Custody Jurisdiction Act of June 30, 1977, P.L. ___, 11 P.S. §2301 et seq. However, that act appears to us to cover only interstate situations and does not control the present fact situation or authorize transfer between counties within Pennsylvania.

The legislature has also authorized transfer from county of improper venue to a county of proper venue in the Pennsylvania Civil Procedural Support Law of July 13, 1953, P.L. 431, 62 P.S. §2043.31 et seq. This statute makes no mention of custody proceedings and is also inapplicable to the instant case. Incidentally, this act has been the subject of a recent opinion of our Superior Court and so far as we know not yet reported. There the Superior Court reversed dismissal of a support complaint in the lower court and remanded for transfer to the county where respondent appears to reside. We observe that the language of the opinion grounds the decision squarely upon the statutory

direction. There is no suggestion that transfer is proper in the absence of statutory authority.

In the instant case counsel for mother-respondent has appeared before us and objected to venue in this court on the ground that no proper legal process has issued out of Beaver County or been served upon his client. The record shows that this contention is factually correct. Petitioner's counsel has not referred us to any authority in law for the action taken by Judge Brosky in issuing his order of transfer. Our own research has revealed no such authority. We therefore conclude that the case is not properly before us. We shall enter an order directing our prothonotary to return the entire record in this case to the Court of Common Pleas of Allegheny County where the parties will be at liberty to seek further proceedings according to law.

We note parenthetically that an act has been introduced in the current session of the legislature which would authorize transfer of custody cases between counties in a manner analogous to the transfer procedure now provided under the Uniform Child Custody Jurisdiction Act, supra, in interstate situations. However, the answer to our most recent inquiry as to the status of this bill was that it has not yet been enacted.

## ORDER

And now, February 23, 1978, for the reasons set forth in the foregoing opinion, the prothonotary of Beaver County is directed to certify in proper form and return to the Court of Common Pleas of Allegheny County, Pennsylvania, the record in this case.